DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Leslie Spinetti has appealed from a judgment of the Summit County Common Pleas Court, Domestic Relations Division, which held that three checks, totaling $60,000, were intended as individual gifts to Appellee Ronald Spinetti, Jr. and, as a result, classified them as separate, not marital, property. This Court affirms.
 I.
Appellee Ronald Spinetti, Jr. and Appellant Leslie Spinetti were married on August 8, 1992. Three years after their marriage, Appellee's father passed away. At the time of his death, his father had a life insurance policy from the Chrysler Corporation with a death benefit of $120,000. As beneficiary of that policy, Louise Spinetti, Appellee's mother, deposited the proceeds of that benefit in her account at Ohio Savings Bank. Thereafter, she gave $40,000 to her daughter and $20,000 to her only grandchild.
On July 8, 1995, the parties entered into a purchase agreement with Appellee's mother to purchase her home for $120,000. The agreement stated that Appellee and Appellant were going to pay $60,000 as a down payment and finance the remaining sum. On August 16, 1995, Appellee's mother caused the bank to draft three checks made payable to "Third Federal Savings," (Third Federal) which totaled $60,000. The memorandum line on each check read, "Louise Spinetti for R and L Spinetti." The money was deposited into an account at Third Federal and then used as a down payment for the home.
On February 28, 1999, Appellee sued Appellant for divorce in the Summit County Common Pleas Court, Domestic Relations Division. Appellant answered and asserted a counterclaim for divorce as well. Thereafter, the matter was referred to a magistrate, who rendered a decision on February 17, 2000. In that decision, after finding that the parties were incompatible, the magistrate determined that the primary issue in the case was whether the $60,000 from Appellee's mother, which had been used as a down payment for the parties' home, was marital or Appellee's separate property. He concluded that the $60,000 gift was Appellee's separate property. Appellant filed her objections to which Appellee responded. On May 11, 2000, the trial court overruled Appellant's objections, entered a decree of divorce and held that the $60,000 gift was Appellee's separate property. Appellant timely appealed, asserting one assignment of error.
 II. The trial court erred as a matter of law in determining that the [$60,000] gift was a gift to Appellee alone because on the basis of the evidence presented it is legally impossible that Appellee could prove by clear and convincing evidence that it was a gift to him alone.
For her sole assignment of error, Appellant has argued that based on the evidence submitted, Appellee could not possibly have satisfied his burden of proof as to the legal status of the $60,000 gift. In other words, she has challenged the trial court's factual findings as to Appellee's mother's intent. Specifically, Appellant has maintained that all the documentation relating to the transfer indicates that the money was intended as a gift to both parties. She has pointed out that the money was deposited into an account under both parties' names, and that each check, the purchase agreement and title to the property all refer to both parties.
In response, Appellee has asserted that the evidence adduced was enough to satisfy his burden. Essentially, he has claimed that where it is clear that a donee child is the natural object of the parent's bounty and where there are transfers of similar equal value made to all siblings, the property gifted is the separate property of the recipient child. In support of his claim, Appellee has directed this Court's attention to the fact that Appellee's mother had gifted $60,000 to Appellee's sister's family during the same time period and that the origin of that money was also the source of the sum gifted to him. Next, Appellee pointed out that the property purchased with the funds in question belonged to Appellee's parents and was the home in which he and his sister were raised. He also countered Appellant's claim with regard to the memorandum line with evidence that Appellee's mother did not fill out the checks. Lastly, he has pointed to his and his mother's testimony wherein each stated unequivocally that the $60,000 was intended to be a gift to Appellee alone and that each had told this to Appellant.
In dividing property during a divorce proceeding, R.C. 3105.171(B) and (D) require the trial court to classify assets as marital or non-marital and then award each spouse his or her own separate, non-marital property. Under R.C. 3105.171(A)(6)(a)(vii), property received after the date of the marriage will be classified as separate if one spouse can prove by clearing and convincing evidence that such property was a gift to him or her individually, whether it was from the other spouse or from a third party. Thus, the initial inquiry is a factual one, while the second inquiry involves a legal question. Stated another way, a trial court must first determine whether the subject property was intended to be a gift to the individual spouse and then, in light of its determination, apply the statute's dictates. See Barkley v. Barkley (1997), 119 Ohio App.3d 155,159. Finally, the party seeking to have the property deemed separate,i.e. non-marital, bears the burden of proof on this issue. See R.C.3105.171(A)(6)(a)(vii). See, also, Wolfangel v. Wolfangel (May 24, 1995), Summit App. No. 16868, unreported, at 6.
Different standards of review have been applied by Ohio courts when reviewing the factual conclusions underpinning the classification of property in divorce cases. In the past, this Court has reviewed the trial court's classification of property as separate or marital to determine whether it had abused its discretion, see, e.g., Burner v. Burner (Oct. 18, 2000), Summit App. No. 19903, unreported, at 4, citing Peck v. Peck
(1994), 96 Ohio App.3d 731, 734, or whether the classification was supported by some competent, credible evidence. See, e.g., Poulton v.Poulton (Feb. 7, 2001), Medina App. No. 3056-M, unreported, at 11. Because of this conflict, this Court is compelled to reconsider what standard of review is applicable in light of the language and operation of R.C. 3105.171.
Marital property is defined in R.C. 3105.171(A)(3)(a) to include:
 (i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 (ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 (iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;
 (iv) A participant account, as defined in section 145.71
of the Revised Code, of either of the spouses, to the extent of the following: the moneys that have been deferred by a continuing member or participating employee, as defined in that section, and that have been transmitted to the Ohio public employees deferred compensation board during the marriage and any income that is derived from the investment of those moneys during the marriage; the moneys that have been deferred by an officer or employee of a municipal corporation and that have been transmitted to the governing board, administrator, depository, or trustee of the deferred compensation program of the municipal corporation during the marriage and any income that is derived from the investment of those moneys during the marriage; or the moneys that have been deferred by an officer or employee of a government unit, as defined in section 145.74 of the Revised Code, and that have been transmitted to the governing board, as defined in that section, during the marriage and any income that is derived from the investment of those moneys during the marriage.
Separate property, on the other hand, is defined in R.C. 3105.171(A)(6), which provides:
 (a) * * * [a]ll real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 (i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
 (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 (iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;
 (iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17
of the Revised Code;
 (v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;
 (vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;
 (vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.
 (b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.
Reading the above sections as a whole, this Court holds, as a majority of Ohio's other appellate courts have recently held,[1] that when the trial court's factual conclusions are challenged, the review which best comports with the requirements of R.C. 3105.171(A) is whether those findings are supported by some competent, credible evidence. Barkley,119 Ohio App.3d at 159.[2] "This standard of review is highly deferential and even `some' evidence is sufficient to sustain the judgment and prevent a reversal." Barkley, 119 Ohio App.3d at 159. Thus, this Court is guided by a presumption that the findings of a trial court are correct, since the trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the proffered testimony.[3]Id., citing In re Jane Doe I (1990), 57 Ohio St.3d 135.
In the instant case, as the party seeking to have the property deemedseparate, Appellee bore the burden of proof by clear and convincing evidence. "Clear and convincing evidence" means that degree of proof that will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Barkley,119 Ohio App.3d at 168-169. Appellee sought to establish that $60,000 worth of checks from his mother was separate property intended as a gift to him alone. Hence, he was required to show that his mother intended to relinquish her ownership, dominion and control of the money and delivered the same to him. He produced evidence that the source of the money was the proceeds from his father's life insurance policy, that his mother had also gifted a similar amount to his only sibling from the same proceeds and that the money was used to purchase the home in which he was raised.[4] He and his mother also testified that while the money was deposited into a joint account, it was intended to be a gift to Appellee. In turn, Appellant pointed to evidence that the checks, bank records, the purchase agreement and title to the home all referred to both parties. In the end, the trial court was in the best position to judge the evidence, the witnesses and their credibility. After reviewing the record, this Court holds that the trial court's factual determination, to wit: that the $60,000 was an individual gift to Appellee, was supported by competent, credible evidence.
 III.
Bearing the standard of review in mind, Appellant's assignment of error is overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ BETH WHITMORE
BATCHELDER, P. J., BAIRD, J., CONCUR.
[1] See James v. James (1995), 101 Ohio App.3d 668, 684 (Second District); Angles v. Angles (Sept. 15, 2000), Fairfield App. No. 00CA01, unreported, 2000 Ohio App. LEXIS 4281, at *6 (Fifth District); Okos v.Okos (2000), 137 Ohio App.3d 563, 570 (Sixth District); Mills v. Mills
(Dec. 7, 1999), Columbiana App. No. 98-C-75, unreported, 1999 Ohio App. LEXIS 5958, at *6 (Seventh District); Glick v. Glick (1999),133 Ohio App.3d 821, 829 (Eighth District); Crowder v. Crowder (Aug. 5, 1999), Franklin App. No. 98AP-1124, unreported, 1999 Ohio App. LEXIS 3550, at *9-10 (Tenth District); Snyder v. Snyder (Dec. 22, 2000), Geauga App. No. 99-G-2230, unreported, 2000 Ohio App. LEXIS 6108, at *10 (Eleventh District); and, Johnson v. Johnson (Sept. 27, 1999), Warren App. No. CA99-01-001, unreported, 1999 Ohio App. LEXIS 4596, at *9 (Twelfth District).
[2] In Barkley, the court labeled this standard "manifest weight of the evidence," based on prior Ohio Supreme Court authority. That is not the standard being applied by this Court here. To clarify, this Court has previously held that when evaluating whether a judgment is against themanifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. See Frederick v.Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment].
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also, State v. Otten
(1986), 33 Ohio App.3d 339, 340. Accordingly, before an appellate court will reverse a judgment as against the manifest weight, it must determine that the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
[3] It is also important to note that in the past, this Court has held a trial court's adoption of a magistrate's decision is reviewed under an abuse of discretion standard of review. See Mealey v. Mealey (May 8, 1996), Wayne App. No. 95CA0093, unreported, at 5. Nevertheless, the parties have not assigned this point as error, and this Court expresses no opinion in that regard.
[4] While not argued, it is important to note that the analysis becomes more complex when separate property is commingled with marital property, as here in this case when the money was applied to the parties' home. When faced with these circumstances, this Court has held that separate property retains its identity even when it is commingled with marital property, but only if the separate property is traceable. Modon v. Modon
(1996), 115 Ohio App.3d 810, 815. The party seeking to have a particular commingled asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace that asset toseparate property. Id.
In the present case, Appellee met this burden. It is undisputed that the money in question was dispatched from the account owned by Appellee's mother and, in turn, traceable to the proceeds of his father's life insurance policy.