MODON, Appellee,

v.

MODON, Appellant.

[Cite as *Modon v. Modon* (1996), 115 Ohio App.3d 810.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17713.

Decided Nov. 27, 1996.

*Randal A. Lowry,* for appellee.

*David H. Ferguson,* for appellant.

DICKINSON, Judge.

Defendant Aris Modon has appealed from an order of the Summit County Domestic Relations Court that granted him and plaintiff Madeline Modon a divorce from each other. He has argued that the trial court (1) incorrectly determined that the full amount of a personal injury settlement received by the parties was marital property, (2) incorrectly found that he had dissipated marital assets and, on that basis, refused to compensate him for Mrs. Modon's dissipation of marital assets, and (3) incorrectly ordered him to pay Mrs. Modon one-half of the proceeds from a land contract payoff that he received while this case was pending before the trial court.[1] This court affirms the judgment of the trial court because (1) Mr. Modon failed to carry his burden of proving what amount of the personal injury settlement was his separate property, (2) the trial court's determination that Mr. Modon had dissipated marital property was not against

---

1. Mr. Modon's assignments of error have been rearranged for ease of discussion.

the manifest weight of the evidence, and it did not abuse its discretion by refusing to compensate Mr. Modon for Mrs. Modon's dissipation of assets, and (3) the trial court did not err by ordering Mr. Modon to pay Mrs. Modon one-half of the proceeds from the land contract payoff.

## I

Mr. and Mrs. Modon were married on August 29, 1953. Mrs. Modon filed this divorce action on April 14, 1994, and Mr. Modon filed an answer and counterclaim for divorce on May 2, 1994. This matter was tried before the trial court commencing July 28, 1995. The trial court entered a final judgment granting the parties a divorce from each other and dividing their property on February 2, 1996. Mr. Modon timely appealed to this court.

## II

### A

Mr. Modon's first assignment of error is that the trial court incorrectly determined that the full amount of a personal injury settlement received by the parties was marital property. Mr. Modon had been seriously injured in an airplane crash during 1989. He was hospitalized for two months following the crash and spent an additional two months in a rehabilitation facility. He then returned to work, but worked only a year before retiring during November 1990. He was sixty-two years old when he retired.

Mr. and Mrs. Modon brought a personal injury action against two defendants for damages they allegedly suffered as a result of the airplane crash. During 1991, they settled their claim against one of the defendants for $500,000 and against the other defendant for $100,000. Each defendant sent a settlement check in the correct amount to the attorney who had represented the Modons in their personal injury action. Each check was payable jointly to Mr. and Mrs. Modon and their personal injury attorney. The attorney sent the checks to the Modons with instructions to endorse them and return them to him. He also asked them how they wished to receive the net settlement proceeds:

"We need to know whether you want the funds distributed in one check made payable to both of you or in separate checks and if the latter we need to know your preference of allocation.

"You were both parties to the lawsuit. [Mr. Modon] had the 'underlying' claim arising from the accident itself and [Mrs. Modon's] claim was 'derivative' arising from her marriage to [Mr. Modon]. Both claims were for money damages as a result of (1) injuries suffered by [Mr. Modon] and (2) loss of consortium by [Mrs. Modon] as a result of the injuries sustained by [Mr. Modon].

"If this case had proceeded to a jury trial, the verdict form would have included separate lines which a jury would fill in (assuming liability) awarding individual amounts to each of you.

"Since we did not proceed to trial, no allocation was made. At this point, you can decide to receive a single check without allocation, payable to both of you; or receive separate checks, hopefully based upon an amicably agreed allocation."

The Modons instructed him to send them one check payable to both of them.

On June 25, 1991, the Modons' personal injury attorney sent them a check, payable to them jointly, for $383,908.59, the amount of their settlement minus expenses and attorney fees. At the trial of this action, Mr. Modon presented evidence tracing all but approximately $70,000 of the net settlement proceeds into assets held by the parties at the time of trial. He argued that most of the net settlement proceeds had been his separate property and, therefore, the assets into which he traced those proceeds were his separate property.

R.C. 3105.171(A)(6)(a) provides that compensation for personal injury, with certain exceptions, is separate property:

" 'Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:

" * * *

"(vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets[.]"

Mr. Modon supported his claim that the assets into which he traced settlement proceeds were his separate property with the expert testimony of a personal injury attorney and with his own testimony.

Mr. Modon's expert witness testified that the Modons' claim would have consisted of five parts: (1) compensation for Mr. Modon's permanent injuries, (2) compensation for Mr. Modon's pain and suffering, (3) compensation for Mr. Modon's medical expenses, (4) compensation for Mr. Modon's lost wages, and (5) compensation for Mrs. Modon's loss of consortium. Compensation for Mr. Modon's permanent injuries and his pain and suffering would have been his separate property because they would not have been compensation for "loss of marital earnings" or "compensation for expenses paid from marital assets." Mr. Modon testified that all his medical expenses had been paid by insurance. Accordingly, compensation for his medical expenses also would not have been compensation for "loss of marital earnings" or "compensation for expenses paid from marital assets." Pursuant to R.C. 3105.171(A)(6)(a), therefore, to the extent that the net settlement proceeds consisted of the first three elements listed by Mr. Modon's expert, they would have been Mr. Modon's separate property.

To the extent that the net settlement proceeds represented compensation for Mr. Modon's lost wages, they would have been marital property because those wages would have been "marital earnings" within the meaning of R.C. 3105.171(A)(6)(a). According to Mr. Modon, his employer paid him most of his salary for the period that he was off work recovering from his injuries. He also claimed that he had always intended to retire at age sixty-two and, therefore, his injuries had not cut short his intended career. Based upon that, Mr. Modon's expert testified that only $1,500 of the net settlement proceeds would have been compensation for Mr. Modon's lost wages.

Mrs. Modon impeached Mr. Modon's testimony about his retirement plans with interrogatory responses and deposition testimony that he had provided during the personal injury action. In response to an interrogatory about his lost compensation, he had written that, before the airplane crash, he had "intended to continue working for several years." When asked at his deposition whether he considered his retirement "precipitated by the airplane accident," he responded: "Absolutely."

In addition, on cross examination, Mr. Modon's expert acknowledged that he had not known that Mrs. Modon had given up her employment in order to care for Mr. Modon during his recuperation. Just as reimbursement of Mr. Modon's lost wages would have been marital property, to the extent that the settlement proceeds represented reimbursement for Mrs. Modon's lost wages, they also would have been marital property.

To the extent that the net settlement proceeds represented compensation for Mrs. Modon's loss of consortium, they would have been her separate property. *Tomlin v. Tomlin* (Mar. 16, 1987), Montgomery App. No. 10094, unreported, 1987 WL 7870, at * 4; *Everhardt v. Everhardt* (Feb. 6, 1987), Lucas App. No. L–86–060, unreported, 1987 WL 6197, at * 4. Mr. Modon's expert witness testified that Mrs. Modon's loss of consortium claim would have represented no more than about three percent of the total settlement, $11,500 of the net settlement proceeds.

The trial court determined that the assets into which Mr. Modon traced the settlement proceeds were not his separate property. In its final entry, it gave three reasons for its determination:

"1. Both Husband and Wife were parties in the lawsuit, and one check was mailed to both of them.

"2. The parties intended the proceeds be marital property and put all funds in joint accounts.

"3. The Court cannot determine what part of the proceeds were for wages, consortium or pain and suffering. The terms of the final settlement were confidential.

"a. It appears that a substantial part of Husband's proceeds were for lost wages.

"b. Part of the proceeds were for Wife's loss of consortium claim, as well as for Wife's lost wages."

Mr. Modon has argued that the "fact that the check was made payable to both parties" and placed in a joint account is irrelevant because, pursuant to R.C. 3105.171(H), "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate." He has further argued that, whether the parties intended the settlement proceeds to be marital property is also irrelevant because "[t]here is *nothing* in [R.C. 3105.171] that indicates that the *intent* of the spouses has any bearing on whether property is marital or separate." (Emphasis *sic.*) Finally, he has disputed the trial court's conclusion that it could not determine how much of the settlement check was for lost wages, lost consortium, or pain and suffering:

"Finally, the trial court said it could not determine what part of the settlement was for lost wages, loss of consortium or pain and suffering. There was certainly evidence on all of those issues."

Regardless of whether Mr. Modon is correct about the relevance of both parties' names on the check, the placement of the proceeds in a joint account, and the parties' intent, the trial court's inability to determine what amount of those proceeds was payment for loss of wages and Mrs. Modon's loss of consortium as opposed to compensation for Mr. Modon's permanent injuries, pain and suffering, and medical expenses was fatal to his claim of separate property. Pursuant to R.C. 3105.171(A)(6)(b), commingling of separate property and marital property does not destroy the identity of the separate property so long as the separate property can be traced:

"The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable."

The burden of tracing separate property is on the party claiming its existence. *Franklin v. Franklin* (June 8, 1994), Summit App. No. 16366, unreported, 1994 WL 246156, at * 2.

Some part of the settlement proceeds was compensation to Mr. Modon for his permanent injuries, pain and suffering, and medical expenses; some part was

reimbursement for lost marital income; and, finally, some part was compensation to Mrs. Modon for her loss of consortium. By choosing to receive the settlement proceeds in one check, the Modons commingled their separate and marital property. In order for Mr. Modon's separate property to maintain its separate character, he had to trace it to the check. In order to do so, he had the burden of convincing the trial court how much of the check was compensation for his permanent injuries, pain and suffering, and medical expenses. He attempted to do that with his own testimony that he had intended to retire at age sixty-two before his injuries and the testimony of his expert witness breaking down the settlement into its constituents.

The trial court found that Mr. Modon's testimony that he had always intended to retire at age sixty-two was less credible than his deposition testimony from the personal injury case. Further, it apparently found his expert witness's attempt to break down the settlement into its constituents unconvincing. The trial court's conclusion that it could not determine "what part of the proceeds were for wages, consortium or pain and suffering" was not against the manifest weight of the evidence. It was justified in not believing Mr. Modon's changed testimony. Further, his expert witness had not been involved in the personal injury action and had learned all that he knew about that action from Mr. Modon.

Although Mr. Modon presented evidence tracing most of the settlement proceeds into assets still held by the parties at the time of the divorce, that evidence was irrelevant because of his failure to adequately trace his separate property into the settlement proceeds. Mr. Modon's first assignment of error is overruled.

B

Mr. Modon's second assignment of error is that the trial court incorrectly found that he had dissipated marital assets and, on that basis, refused to compensate him for Mrs. Modon's dissipation of marital assets. R.C. 3105.171(E)(3) provides:

"If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."

At trial, both parties argued that the other had dissipated marital funds. Mrs. Modon argued that Mr. Modon had used funds from a marital business account for personal expenses, including paying temporary spousal support to her. Mr. Modon argued that Mrs. Modon had withdrawn funds from a marital account and refused to return them after being ordered to do so. As a result, according to

him, interest payments on those funds were lost. The trial court concluded that both parties had been at fault:

"The Court finds both parties at fault in dissipating marital assets and does not reimburse either party for their wrongdoing. A receiver should have been appointed to handle all financial matters; however, there was no request for this. Both parties incurred substantial financial losses because of their lack of cooperation and accuracy."

The trial court's determination that Mr. Modon engaged in dissipation of assets was not against the manifest weight of the evidence. Mr. Modon acknowledged at trial that he had not only been taking $800 per month from the marital business account to reimburse himself for managing marital rental properties, as he had been authorized to do, but had also been taking an additional $714 per month from that account to reimburse himself for spousal support that was being withheld from his social security and pension benefits:

"THE COURT: So, you really took fifteen hundred a month then from this account to pay yourself, is that right?

"[Mr. Modon]: Yes, it is correct, your Honor. And of that, seven hundred and fourteen replaces the money that was taken from my Social Security and pension during this period of time."

Further, the trial court did not abuse its discretion by refusing to compensate Mr. Modon for Mrs. Modon's dissipation of assets because of his own dissipation of assets. Mr. Modon's second assignment of error is overruled.

C

Mr. Modon's third assignment of error is that the trial court incorrectly ordered him to pay Mrs. Modon one-half of the proceeds from a land contract payoff that he received while this case was pending before the trial court. The trial court found the proceeds to be a marital asset and ordered that they be divided along with other marital property. Mr. Modon argued that the payoff proceeds were shown by the evidence to have been properly spent on taxes and expenses for jointly owned business property and were no longer available for division. In addition, Mr. Modon has pointed out that Mrs. Modon offered no evidence at trial to controvert his testimony about how he had spent the proceeds.

The trier of fact is charged with the responsibility of determining the credibility of testimony. *James v. James* (1995), 101 Ohio App.3d 668, 689, 656 N.E.2d 399, 412. The trial court's finding that Mr. Modon failed to reliably account for his use of the proceeds from the land contract payoff was not against

the manifest weight of the evidence. He was unable to produce written or oral evidence of exactly how he had spent the funds. Moreover, he admitted at trial that he had placed the proceeds into the marital business account mentioned above, which he was found to have dissipated in part. Mr. Modon's argument that the trial court incorrectly treated the funds as if they were still in existence is without merit. If those funds still existed at the time of the divorce, their division as a marital asset was proper. If they did not still exist, the trial court's having treated them as if they did properly compensated Mrs. Modon for her dissipated share, as allowed by R.C. 3105.171(E)(3). Mr. Modon's third assignment of error is overruled.

## III

Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE, J., concurs.

QUILLIN, P.J., dissents.

QUILLIN, Presiding Judge, dissenting.

The trial court's determination that *not one penny* of husband's personal injury settlement was for his own personal injuries and pain and suffering, and thus his separate property, was a patent abuse of discretion.

The husband was seriously injured in an airplane crash. The most serious injury was to his head, although he suffered other injuries. He required extensive surgery to his head and was hospitalized for two months. He was able to return to work after the two month hospital stay and an additional two months of rehabilitation. He lost his sense of smell and his sense of taste. The pupils of his eyes are permanently dilated, causing him pain when he is subjected to sunlight or a brightly lit room. He suffers from permanent double vision. He suffers from loss of memory, especially short-term memory. The wife does not contest the extent or the seriousness of the husband's injuries. The *only* evidence as to a proper allocation of the award came from the husband. The wife offered none. Although there was sharp disagreement between the parties at the trial level, there was no claim by the wife that *none* of the award was for the husband's permanent injuries and his pain and suffering.

Although it might have been difficult to allocate the award, and even if such allocation would be inexact, that still does not justify a refusal to allocate some portion of the award to husband as his separate property.

The judgment should be reversed.