DECISION AND JUDGMENT ENTRY
This is an appeal from a Washington County Common Pleas Court judgment granting Dale G. Knight, plaintiff below and appellee herein, a divorce from Carolyn E. Knight (nka Carolyn E. Boley), defendant below and appellant herein.
Appellant raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ABUSED ITS DISCRETION AND MADE FINDINGS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THE IDENTIFICATION OF MARITAL PROPERTY AS SEPARATE PROPERTY."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING DEFENDANT-APPELLANT IN DIRECT CONTEMPT OF THE COURT."
Our review of the record reveals the following facts pertinent to the instant appeal. On October 16, 1993, the parties married. In June of 1998, the parties separated, and on May 19, 1999, the parties were divorced.
In its judgment granting the parties' divorce, the trial court ordered the parties to comply with an antenuptial agreement. The trial court further determined that appellee had contributed $24,000 as his separate property to improvements on real estate that the parties had purchased during their marriage and that appellant contributed $56,400 as her separate property to the improvements. Consequently, the trial court ordered the parties to sell the real estate and ordered that each party would receive the amount they separately contributed, with the excess proceeds, if any, to be divided equally.
Appellant appealed the trial court's judgment. Appellant argued that the trial court erred by determining that appellee traced $24,000 as his separate property into the improvements to the real estate. This court reversed the trial court's judgment and remanded the matter with instructions (1) to assign value to certain items of property, (2) to determine the traceability of appellee's $24,000, and (3) to determine what constituted marital property and what constituted separate property. See Knight v. Knight (Apr. 12, 2000), Washington App. No. 99 CA 27, unreported.
On July 25, 2000, the trial court held a hearing to consider the issues outlined in our decision and judgment entry. At the hearing, appellee testified that he did not bring much separate property into the marriage. Appellee stated that prior to his marriage to appellant, he owned a refrigerator and some miscellaneous items of furniture, a boat, and a pickup truck. Appellee explained that he sold the refrigerator for $100 and that he sold the boat for $5,500. Appellee stated that he felt the proceeds from the sale of the refrigerator and of the boat "ended up in [the] house eventually."
Appellee testified that in 1994, he purchased a Jeep and he obtained a loan for approximately $5,580. He stated that he paid approximately $10,000 down on the Jeep. He explained the source of the $10,000 down payment as follows: "Well, it's just — like I say, I mean, I sold the boat for $5,500, I worked and put the money in the bank, so it's — you know, I mean, it accumulated from those two sources."
During the marriage, appellee sold the Jeep for $15,700. Appellee stated that he used part of the money to pay off the loan balance remaining on the Jeep and that the remaining amount went into the house. Appellee could not state how much money he profited, if any, from the sale of the Jeep.
Appellee also stated that prior to his marriage, he owned some business equipment that he sold during the marriage for $2,200. He stated that he placed the money in a checking account at Bank One. During the marriage, appellee purchased new business equipment for $7,227.
Appellee further testified that during the marriage, he purchased an IRA and that he obtained the funds to purchase the IRA from "working."[1]
On August 7, 2000, the trial court found the following with respect to the traceability of appellee's $24,000: (1) appellee had no cash when he entered the marriage and had a negative balance due to a small loan at Bank One; (2) appellee owned a boat prior to the marriage and sold it during the marriage for $5,500; (3) appellee applied the proceeds from the sale of the boat to purchase a Jeep; (4) appellee also used his earnings to contribute to the down payment on the Jeep and to make payments on the loan for the Jeep; (5) appellant used her earnings "exclusively" for groceries and household expenses; (6) appellee sold the Jeep for $15,700 and used the money toward construction of the new house; (5) appellee sold a refrigerator he owned prior to the marriage for $100; (6) appellee sold business tools that he owned prior to the marriage for $2,200 and bought replacement tools valued at $7,227.
The trial court found that appellee could trace $18,000 as his separate property. The court explained its reasoning as follows:
 "[Appellee] worked. His money went to certain assets and certain expenses. Premarital, he sold a refrigerator for $100. He sold his boat, which is his separate property, for $5,500. He used that money towards the purchase of a Jeep, which he subsequently sold for $15,700. He sold his tools for $2,200 during the parties' separation. So that would be $18,000 that he has as his separate property. He subsequently bought tools when the parties reunited, for $7,227, which is his separate property. That would leave him $10,773 in cash. From that, he purchased a $2,000 IRA. That leaves him $8,773 to invest in the house, which is the amount of money he invested in the house that we can trace."
The trial court found appellee's 1998 IRA to be separate property because appellee purchased it with his earnings. The trial court awarded appellee his business equipment and his IRA. The court distributed the proceeds from the sale of the house as follows: (1) $56,400 to appellant; (2) $7,085 to appellee; and (3) the remaining balance, if any, to be divided equally.
After the court announced its decision, the trial court permitted appellant to express her views. Appellant apparently took advantage of the trial court's invitation and was subsequently found in contempt of court.[2] Appellant subsequently paid the fine. Appellant did not seek a stay of the trial court's contempt finding. Appellant filed a timely notice of appeal.
 I
In her first assignment of error, appellant argues that the trial court erred in determining what properly constituted marital property and what constituted separate property. Appellant asserts that the trial court erroneously concluded that appellee traced $18,000 as his separate property. Appellant contends that the trial court erred: (1) by finding that the proceeds from the sale of the boat could be traced to the Jeep; (2) by awarding the proceeds from the sale of Jeep to appellee as separate property; (3) by finding the $2,200 realized upon the sale of appellee's business tools to be appellee's separate property; (4) by awarding appellee the $7,227 business equipment that he purchased during the marriage as his separate property; and (5) by finding that the 1998 IRA that appellee purchased with money from his "earnings" to be appellee's separate property.
R.C. 3105.171(B) requires a trial court to "equitably" divide marital and separate property. Ordinarily, an "equitable" division of property requires the court to divide marital property equally. R.C. 3105.171(C)(1). If, however, an equal division would produce an inequitable result, the court must divide the property in the manner the court determines to be equitable. Id. An "equitable" division of property also generally requires the court to distribute separate property to the spouse who brought that property into the marriage, except as further indicated in the statute. R.C. 3105.171(D).
A trial court possesses broad discretion in fashioning an equitable division of property. Accordingly, absent an abuse of discretion, a reviewing court ordinarily will not reverse the trial court's decision. See, e.g., Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131,541 N.E.2d 597; Worthington v. Worthington (1986), 21 Ohio St.3d 73, 76,488 N.E.2d 150; Martin v. Martin (1985), 18 Ohio St.3d 292, 294-295,480 N.E.2d 1112. An abuse of discretion implies more than an error of judgment or of law. Rather, a trial court abuses its discretion when the court acts in an unreasonable, arbitrary or unconscionable manner. See,e.g., Masters v. Masters (1994), 69 Ohio St.3d 83, 85, 630 N.E.2d 665;Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
In fashioning an equitable division of property, the trial court must classify the parties' property as marital or separate.[3] R.C.3105.171(B). Whether to classify property as marital or separate involves a factual inquiry. Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159,694 N.E.2d 989, 992; Wright v. Wright (Nov. 10, 1994), Hocking App. No. 94CA02, unreported. Thus, a reviewing court will not disturb a trial court's characterization of property as marital or separate unless that finding is against the manifest weight of the evidence. Barkley; Wyliev. Wylie (May 30, 1996), Lawrence App. No. 95CA18, unreported; Miller v.Miller (Dec. 1, 1993), Washington App. No. 93CA07, unreported. "This standard of review is highly deferential and even `some' evidence is sufficient to sustain the judgment and prevent a reversal." Barkley,119 Ohio App.3d at 159, 694 N.E.2d at 992.
Moreover, because the trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and to use those observations in weighing the credibility of the proffered testimony, a reviewing court should be guided by a presumption that the findings of a trial court are correct. Id. (citing In re Jane Doe I
(1990), 57 Ohio St.3d 135, 566 N.E.2d 1181).
R.C. 3105.171 provides a trial court with guidance when determining whether to classify property as marital or separate. Marital property includes property currently owned by either or both of the spouses and that was acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3)(a)(i). A presumption arises that property is marital property if the parties acquired the property during the marriage.Barkley, 119 Ohio App.3d at 160, 694 N.E.2d at 993. A party may rebut the presumption by demonstrating that the property is, indeed, separate property. Id.
Separate property includes "all real and personal property and any interest in real or personal property that * * * was acquired by one spouse prior to the date of the marriage." R.C. 3105.171(A)(6)(a)(ii). Separate property is presumed to remain separate as long as it is traceable, regardless of whether it has been commingled with other property. R.C. 3105.171(A)(6)(b) ("The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable."); see Barkley, 119 Ohio App.3d at 160,694 N.E.2d at 993; Modon v. Modon (1996), 115 Ohio App.3d 810, 815, 686 N.E.2d 355;Peck v. Peck (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300; Freytagv. Freytag (Aug. 15, 1994), Butler App. No. CA93-11-223, unreported;Rinehart v. Rinehart (Dec. 13, 1995), Gallia App. Nos. 94CA26 and 95CA06, unreported. "Accordingly, the key question is whether an asset may be traced to a separate property source." Parker v. Parker (June 8, 2000), Scioto App. No. 98 CA 2628, unreported (citing Peck,96 Ohio App.3d at 734, 645 N.E.2d at 1302). "The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence to trace the asset to separate property." Munroe v. Munroe (1997), 119 Ohio App.3d 530, 536,695 N.E.2d 1155; see, also, Peck, supra; Parker.
In the case at bar, appellee sold various items of separate property and then commingled the proceeds with marital property. The trial court nevertheless found that appellee could trace $18,000 as his separate property. The trial court appears to have calculated the $18,000 as follows: (1) $100 for the refrigerator that appellee owned prior to the marriage; (2) $2,200 for the business tools that appellee owned prior to the marriage; (3) $5,500 for the boat that appellee owned prior to the marriage; and (4) $10,200 for the sale of the Jeep that appellant acquired during the marriage (the sale price, $15,700, minus the $5,500 from the boat proceeds that went into the down payment on the Jeep). The trial court then determined that from the proceeds realized from the sale of the above items of separate property, appellee purchased an IRA for $2,000 and new business equipment for $7,227. The trial court thus subtracted $9,227 from $18,000 to conclude that appellee had contributed $8,773 in cash to the marital property.
After our review of the evidence, we find that the trial court erred in tracing a portion of appellee's separate property. The evidence presented at the hearing reveals that appellee could trace the following items of property as his separate property: (1) the refrigerator, sold for $100; (2) the business equipment that he owned prior to the marriage, sold for $2,200; and (3) the boat that he owned prior to the marriage, sold for $5,500. Appellee stated that he used the funds realized upon sale to help improve the marital residence. Thus, appellee traced $7,800 as his separate property. The trial court appropriately determined that appellee applied the funds realized from the sale of his separate property to the marital home.
We agree with appellant, however, that the trial court erred in the following respects: (1) by crediting appellee with the amount of money realized upon sale of the Jeep; (2) by awarding appellee the $7,227 in business equipment as separate property; and (3) by awarding appellee the 1998 IRA as his separate property. Appellee's testimony concerning the source of funds used to purchase the Jeep indicates that he used only $5,500 of his separate property to purchase the Jeep. Appellee stated that the money he received upon the sale of the boat was used to make the down payment on the Jeep. Appellee further stated that he obtained the remainder of the funds for the Jeep's down payment from the parties' joint checking account and that he financed the remaining balance, using money earned during the marriage to make monthly payments. Thus, the trial court erred in crediting appellee with the $15,700 sale price of the Jeep.[4] At most, appellee traced $5,500 into the Jeep.
We further agree with appellant that the trial court erroneously awarded appellee the $7,227 business equipment as his separate property. Appellee purchased the property during the marriage. It is well-established that property acquired during the marriage is marital property, unless otherwise proven that it is separate property. R.C.3105.171(A)(3)(a)(i); see, also, McDonald v. McDonald (Aug. 27, 1998), Highland App. No. 96 CA 912, unreported (finding that farm equipment purchased after the parties had married constituted marital property). Because the property was acquired during the marriage, it is marital property. Appellee has not proven by a preponderance of the evidence that separate property was used to acquire the business tools.
We also agree with appellant that the trial court erred by awarding appellee the 1998 IRA as his separate property. The evidence adduced at the hearing reveals that appellee acquired the IRA during the marriage and that appellee used money he earned during the marriage to purchase the IRA. Thus, pursuant to R.C. 3105.171(A)(3)(a)(i), the 1998 IRA is marital property.
In sum, appellee traced only $7,800, not $18,000, as his separate property. Accordingly, based upon the foregoing reasons, we sustain, in part, and overrule, in part, appellant's first assignment of error. On remand, the trial court should consider the parties separate property as determined herein, and fashion an equitable division of the parties' marital property.
 II
In her second assignment of error, appellant asserts that the trial court erred by finding her in contempt of court.[5] We decline however, to address the merits of this issue because the issue is now moot.
In State v. Berndt (1987), 29 Ohio St.3d 3, 4, 504 N.E.2d 712,714, the Ohio Supreme Court stated that an appeal from a contempt charge is moot when a defendant has paid the fine or has otherwise purged the contempt. The court stated:
 "This court has held that `[w]here a defendant, convicted of a criminal offense, has voluntarily paid the fine or completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction.' State v. Wilson (1975), 41 Ohio St.2d 236, 70 O.O.2d 431, 325 N.E.2d 236, syllabus. The burden of presenting evidence that he has such a `substantial stake in the judgment of conviction' is upon the defendant. Id. at 237, 70 O.O.2d at 432, 325 N.E.2d at 237. Thus, this appeal is moot unless appellee has at some point in this proceeding offered evidence from which an inference can be drawn that appellee will suffer some collateral legal disability or loss of civil rights."
In the case sub judice, the evidence reveals that appellant voluntarily paid the fine. Appellant has presented no evidence from which an inference can be drawn that she will suffer some collateral legal disability or loss of civil rights. See In re Knight (Mar. 16, 1994), Ross App. No. 93 CA 1965, unreported; Markan v. Sawchyn (Nov. 18, 1993), Cuyahoga App. Nos. 64134 and 64135, unreported.
Accordingly, appellant's second assignment of error is moot and we decline to address the issue raised in her second assignment of error.
JUDGMENT ENTRY
It is ordered that the judgment be affirmed in part, reversed in part, and remanded for further proceedings. Appellant and appellee shall equally divide costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _______________________________ Peter B. Abele, Presiding Judge
Harsha, J. Kline, J.: For the Court Concur in Judgment Opinion.
[1] "[Y]ou didn't take $2,000 from the boat and put it into an IRA?" "Well, like I said — I mean — it's hard to say what money went where. I mean, I — I made money, I — I sold the boat, I sold the Jeep, and — and the money — you know, I mean, it would be hard to say this dollar went here and that dollar went there, but — you know — I mean — ."
[2] After the trial court permitted appellant to speak and to express her views, appellant advised the court that she did not believe appellee had traced his money. The trial court judge asked appellant if she had anything else to say, to which appellant replied: "No, except that during the first trial, you weren't fair to me, and during this trial, you're not being fair to me either; but, that is your right, and you're taking it." The trial court then stated: "I consider that a contempt of this Court. This Court has done everything it can to be fair. I'm going to assess you $100 fine. I expect that paid within twenty-four hours, or I'll put you in jail."
[3] A trial court should carefully list the parties' assets and specifically state whether the asset is marital or separate. The trial court also must assign a value to each item of property. Without such specific findings, a reviewing court cannot determine whether the trial court equitably divided the property.
[4] Moreover, we note that appellee could not state how much he profited, if at all, from the sale of the Jeep. In fact, at one point during the hearing appellee guessed he may have lost money on the Jeep.
[5] R.C. 2705.01 provides:
 A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice.