This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-Appellant Marvin H. West has appealed from a divorce decree granted by the Wayne County Court of Common Pleas. This Court affirms.
 I
On November 9, 1980, Lois E. West ("Wife") and Marvin H. West ("Husband") were married in Wooster, Ohio. Prior to the marriage, Husband purchased lots 164 and 165 in the Columbus Road development allotment in Wayne County, Ohio.[1] After the marriage, Husband built a house on lot 165. On December 7, 1998, Husband executed a joint and survivorship warranty deed granting Wife a joint interest in lots 164 and 165 and the house on lot 165.
Husband also acquired an interest in oil and gas well investments prior to the marriage. The parties stipulated that these interests obtained prior to the marriage were Husband's separate property. Husband also continued investing after the marriage, acquiring investments with Arrowhead Oil and Gas Co. (interest in four wells after the marriage), Hooser Energy LLC., APC 1997-1, and Wilkes Energy Inc. According to the trial court's finding of facts, the post-marriage oil and gas well investments totaled $44,585.00.
Soon after Husband and Wife were married, the IRS discovered that Husband had failed to pay the appropriate amount of income tax in 1977, 1978, and 1979. As a result of his deficiencies, Husband was ordered to pay approximately $550,000.00 to the IRS. He also owed the State of Ohio $57,213.22 for back taxes. Husband was indicted for tax evasion and received one year probation and a $20,000.00 fine; he also incurred over $40,000.00 in legal fees.
Wife testified that prior to the date of the marriage, she received approximately $100,000.00 in inheritances from the estates of her mother, father, and grandmother. She testified that she transferred the inheritances into Certificates of Deposit ("CDs"), which are "instrument[s] containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money. [They are notes] of the bank." R.C. 1303.03(J). In addition to her testimony, Wife presented bank statements verifying the existence of the CDs. Husband testified that he knew Wife had received money from inheritances, but he thought the total amount was much less than $100,000.00.
On March 7, 2000, Wife filed for divorce from Husband. On May 21, 2001, a magistrate from the Wayne County Court of Common Pleas entered a decision which included findings of fact and conclusions of law. On May 23, 2001, the trial court approved and adopted the magistrate's decision and granted Wife a divorce. Husband has appealed the decision granting the divorce decree, asserting four assignments of error.
 II Assignment of Error Number One The trial court erred in finding that the Wayne County property was marital property and subject to division as such finding is against the manifest weight of the evidence.
Husband has asserted that the trial court erred in finding lots 164 and 165 and the house on lot 165 as marital property because such a finding was against the manifest weight of the evidence. He has argued that the joint and survivorship warranty deed did not transform lots 164 and 165 into marital property and that the record contains no evidence of donative intent; therefore, he claims the disputed lots and the house are separate property. This Court disagrees.
When determining whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. To determine whether a criminal conviction is against the manifest weight of the evidence, the court:
 review[s] the entire record, weigh[s] the evidence and all reasonable inferences, consider[s] the credibility of witnesses and determine[s] whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. Accordingly, before an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice. Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse and order a new trial. Id.
Pursuant to R.C. 3105.171(A)(6)(a)(ii), separate property includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of marriage." Husband owned lots 164 and 165 prior to the date of marriage, therefore, at the time of the marriage, the lots were separate property. Even after the marriage, when Husband used his separate funds to build a house on lot 165, the property remained Husband's separate property. Since lots 164 and 165 and the house on lot 165 were separate property during the marriage, this Court must determine whether an act or event prior to the divorce changed the status of the property.
On December 7, 1998, Husband executed a joint and survivorship warranty deed granting Wife a joint interest in lots 164 and 165 and the house on lot 165. Under R.C. 3105.171(H), "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." Therefore, in order to determine whether lots 164 and 165 and the house on lot 165 were converted into marital property by Husband granting Wife an interest in the property, this Court must review the record for donative intent.
The essential elements of an inter vivos gift are:
 (1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there and (2), in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion and control over it.
Bolles v. Toledo Trust Co. (1936), 132 Ohio St. 21, paragraph one of the syllabus.
A trial court's factual determinations, such as donative intent, must be supported by some competent and credible evidence. Spinetti v.Spinetti (Mar. 14, 2001), Summit App. No. 20113, unreported, at 7, citingBarkley v. Barkley (1997), 119 Ohio App.3d 155, 159. The competent, credible evidence standard "is highly deferential and even `some' evidence is sufficient to sustain the judgment and prevent a reversal."Barkley at 159. Thus, in reviewing the decision of the trial court, this Court must determine if there was competent and credible evidence of Husband's donative intent.
This Court has previously addressed the issue of joint and survivorship deeds in relation to donative intent. In Moore v. Moore (1992),83 Ohio App.3d 75, the husband and wife each brought separate real property to the marriage. During the marriage, each spouse granted an interest in his or her separate property to the other for his or her joint life, remainder to the survivor. Id. This Court found that when a spouse executes a deed granting "the other spouse possession [of previously separate property] during their joint lives [with a right of survivorship], the other spouse gain[s] an interest in the property. Also the transferring spouse's interest in the property change[s]." Id. at 78. This Court went on to hold that the appellant had not offered sufficient evidence to find an abuse of the trial court's discretion on the marital property finding. Id.
In Sweeney v. Sweeney (June 21, 2000), Summit App. No. 19709, unreported, Mr. Sweeney executed a survivorship deed making Mrs. Sweeney a joint owner of a home. Mr. Sweeney's stated intent was to provide for the child that his wife was carrying by having their residence pass to his wife upon his death. Id. at 1-2. While acknowledging that such a deed gives a spouse an interest in the property, this Court affirmed the trial court's finding that Mr. Sweeney's intent was not donative and that, therefore, no gift existed. Id. at 5-6. This Court held that the trial court did not err when it concluded that the home was not converted into marital property. Id.
The Second District Court of Appeals addressed the issue of deeds and donative intent in Helton v. Helton (1996), 114 Ohio App.3d 683. InHelton, Mr. Helton executed a deed conveying to himself and his wife a piece of real property for their joint lives, remainder to the survivor of them. Id. at 685. During the divorce proceedings, Mr. Helton testified that his intent was to provide a home for his wife after his death and also to provide for his daughter by having the property pass to her after Mrs. Helton's death. Id. Mr. Helton argued that he lacked the requisite donative intent to transform the property from separate property into marital property. The Second District found that even though Mr. Helton's main purpose was to avoid tax and probate expenses, he intended to transfer a present possessory interest in the property to his wife at the time he executed the deed and therefore, the property became marital.Id. at 687-688.
In the present case, Husband executed a joint and survivorship warranty deed granting Wife a joint interest in lots 164 and 165 and the house on lot 165. Husband offered no evidence as to his intent at the time of the transfer. Wife testified that the deed was executed because Husband decided it should be done. Wife explained that neither she nor Husband were in good health and they wanted "to get things taken care of." The trial court adopted the magistrate's finding that the property was converted into marital property when Husband executed the deed.
This Court cannot conclude that, given the evidence before it, the trial court lost its way or created a manifest miscarriage of justice such that the judgment must be reversed. This Court finds that the trial court's determination of Husband's donative intent is supported by competent and credible evidence. The first element of an inter vivos
gift, the intent to transfer title and a right to possession then and there, is supported by the joint and survivorship warranty deed signed by Husband and Wife in 1998. Under Moore, Husband's execution of the joint and survivorship deed, which gave Wife a present possessory interest in the property and decreased his own interest in the property, is evidence of Husband's donative intent. The record illustrates that the second element of an inter vivos gift, delivery to the extent practicable, is supported by the deed being filed for record in the Office of the Wayne County Recorder, and Wife's testimony concerning the deed. Further, Husband's decision to execute the deed and "get things taken care of" is evidence of more than mere holding of title. Based on the foregoing, this Court finds that the trial court's factual conclusion of donative intent is supported by competent and credible evidence.
Since the trial court properly determined donative intent, this Court must review the trial court's classification of the property as marital — that is, verify that the facts support the trial court's legal conclusions. After reviewing the record, this Court concludes that the trial court properly labeled lots 164 and 165 and the house on lot 165 as marital property. The finding of Husband's donative intent from the joint and survivorship warranty deed established that the property is currently owned by both of the spouses; therefore, lots 164 and 165 and the house on lot 165 are marital property.[2] See R.C. 3105.171(A)(3)(a)(i). Husband's contention that the judgment was against the manifest weight of the evidence is without merit. Accordingly, Husband's first assignment of error is overruled.
 Assignment of Error Number Two The trial court erred in finding that [Husband's] interests in oil and gas wells were marital property and subject to division as such finding is against the manifest weight of the evidence.
Husband has argued that the trial court erred in labeling the oil and gas well investments in Arrowhead Oil Gas Co., Hooser Energy LLC, APC 1997-1, and Wilkes Energy Inc. as marital property because such a determination was against the manifest weight of the evidence. Husband asserts that the investments made during the marriage are directly traceable to separate property and passive income and are therefore separate property. This Court disagrees.
Under R.C. 3105.171(A)(3)(a)(i-ii), Husband's oil and gas well investment acquisitions in Arrowhead Oil and Gas Co., Hooser Energy LLC, APC 1997-1, and Wilkes Energy Inc., which were made during the marriage, are presumed marital property. To establish that the post-marital investments are actually separate property, Husband must show that the property is an inheritance, was acquired prior to the marriage, or is passive income and appreciation acquired from separate property during the marriage. See R.C. 3105.171(A)(6)(a)(i-iii).
Husband has claimed that the post-marital investments were funded by his pre-marital separate property. R.C. 3105.171(A)(6)(b) provides that "[t]he commingling of separate property with [marital property] does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." The party seeking to have the commingled property deemed separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to his or her separate property.[3] Modon v. Modon (1996), 115 Ohio App.3d 810,815, appeal not allowed (1997), 78 Ohio St.3d 1442. Accordingly, traceability is the focus when determining whether separate property remains separate property once it has been commingled with marital property. Wheeler v. Wheeler (Dec. 12, 2001), Medina App. No. 3188-M, unreported at 7.
Husband testified that the property is traceable because his only significant source of income was his pre-marital, separate oil and gas well investments and that the money to purchase the new, post-marital investments came from his separate oil and gas investment income. While traceability of separate property may be established by the proponent's testimony alone, Husband's testimony does not adequately support his assertion. See Wolfangel v. Wolfangel (May 24, 1995), Summit App. No. 16868, unreported at 5, appeal not allowed (1995), 74 Ohio St.3d 1422. The record contains evidence of various loans, accounts, and oil and gas well investments, but it does not contain distinctions between pre-marital and post-marital money and it does not contain evidence of which kind of money was used for the post-marital investments. Husband's assertion that the couple's combined income was not enough to sustain his post-marital investments does not meet his burden of proof.
This Court cannot conclude that, given the evidence before it, the trial court lost its way or created a manifest miscarriage of justice such that the judgment must be reversed. Husband was continuously investing and re-investing in new and different oil and gas well investments and he did not trace his post-martial investments to his investment income from his pre-marital separate property by a preponderance of the evidence. Accordingly, this Court finds that the disputed oil and gas well investments were properly found to be marital property. Husband's contention that the judgment was against the manifest weight of the evidence is without merit. Therefore, Husband's second assignment of error is overruled.
 Assignment of Error Number Three The trial court erred in finding that [Wife] had separate property in the amount of $100,000 from an inheritance and allegedly brought with her to the marriage.
Husband has asserted that the trial court erred in finding that, prior to the date of the marriage, Wife received inheritances totaling $100,000.00, which she transferred into CDs. Husband testified that although he did not know exactly how much she received, Wife's inheritance was much less than $100,000.00. He further asserted that the distributive award should be overturned because, as he testified, he paid his tax penalties by selling pre-marital, separate investments, cashing in insurance proceeds, and financing another home mortgage — not by withdrawing the CDs. He also testified that he does not know what happened to the CDs.
Wife testified that prior to the date of marriage, she inherited money from her mother, father, and grandmother totaling $100,000.00, which she transferred to CDs. She claims such as separate property under R.C.3105.171(A)(6)(a)(ii), which provides that separate property includes any personal property "that was acquired by one spouse prior to the date of the marriage."
An appellate court reviews the trial court's factual finding as to the existence of a pre-marital inheritance under the competent and credible evidence standard. In order for this Court to affirm the trial court's factual finding, there must be some competent and credible evidence that prior to the marriage, Wife received inheritances totaling $100,000.00 and transferred the inheritances into CDs. See Spinetti at 7.
In addition to her testimony, Wife presented bank statements verifying the existence of the CDs. No evidence was presented that contradicted Wife's claims. Citing Wife's testimony and her bank statements as evidence of her separate property, the trial court found that Wife possessed the CDs as separate property and that she used them to help pay Husband's tax penalties.
As the trier of fact, the trial court was able to evaluate Wife's credibility and determine that she was a truthful witness. See Modon,115 Ohio App.3d at 817. The record shows that some competent and credible evidence existed to establish that Wife possessed the CDs prior to the marriage. Accordingly, this Court cannot conclude that the trial court erred in labeling the CDs Wife's separate property pursuant to R.C.3105.171(A)(6)(a)(ii).
Even assuming, without deciding, that Wife's testimony that she moved the CDs into an account to pay Husband's tax penalties is competent and credible evidence of Wife's donative intent, which converts the CDs into marital property, this Court finds that a distributive award was appropriate under the facts and circumstances of this case.
A distributive award includes "any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support[.]" R.C. 3105.171(A)(1). A trial court's division of property will not be reversed absent an abuse of discretion. See Briganti v.Briganti (1984), 9 Ohio St.3d 220, 222. An abuse of discretion connotes more than an error of law or judgment; it implies an unreasonable, arbitrary, or unconscionable attitude by the trial court. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
R.C. 3105.171(E) includes various provisions for making distributive awards. Under R.C. 3105.171(E)(1), a court "may make a distributive award to facilitate, effectuate, or supplement a division of marital property." Under R.C. 3105.171(E)(2), "[t]he court may make a distributive award in lieu of a division of marital property in order to achieve equity between the spouses, if the court determines that a division of the martial property in kind or in money would be impractical or burdensome." The third provision, which the trial court based its distributive award on, provides that "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." R.C. 3105.171(E)(3).
In determining whether to make a distributive award under R.C.3105.171(E)(1-3), the trial court must consider the factors set forth in R.C. 3105.171(F). The R.C. 3105.171(F) factors include:
(1) The duration of the marriage;
(2) The assets and liabilities of the spouses;
 (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
(4) The liquidity of the property to be distributed;
 (5) The economic desirability of retaining intact an asset or an interest in an asset;
 (6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 (9) Any other factors that the court expressly finds to be relevant and equitable.
Interpreting Husband's third assignment of error as asserting that there is insufficient evidence under the financial misconduct provision of R.C. 3105.171(E), this Court agrees. Citing Haslem v. Haslem (1999),133 Ohio App.3d 257, and R.C. 3105.171(E)(3), the trial court ordered Husband to repay Wife $14,000.00 as compensation for his financial misconduct.[4] The trial court found Husband guilty of financial misconduct because Husband depleted marital assets to pay his tax penalties and fines and because his misconduct resulted in the depletion of Wife's $100,000.00 in CDs. This Court finds that under the facts and circumstances of this case, the financial misconduct provision is not the provision appropriate for the grant of a distributive award. The record does not contain any evidence of financial misconduct by Husband during the marriage; any financial misconduct occurred before the marriage. Moreover, Wife's testimony established that she voluntarily and knowingly used the CDs to pay his tax liabilities. Accordingly, this Court finds that the trial court erred by using the financial misconduct provision to grant Wife's distributive award, but affirms the distributive award decision on other grounds.
Based on its findings of fact, the trial court could have awarded Wife a distributive award under R.C. 3105.171(E)(1). Under R.C. 3105.171(E)(1), the trial court could have granted Wife's distributive award to supplement the division of marital property. See Manning v. Manning
(Aug. 31, 1994), Wayne App. No. 2861, unreported; Guziak v. Guziak
(1992), 80 Ohio App.3d 805.
The record illustrates that the applicable factors of R.C. 3105.171(F) are included in the trial court's factual findings. The trial court calculated that Husband and Wife were married for twenty years. The trial court listed and discussed the assets and liabilities of Husband and Wife. Under R.C. 3105.171(F)(4) and (7), the trial court determined the value of the home on lot 165 and calculated, after the mortgage payment, Husband and Wife's shares of the sale proceeds. The trial court went on to discuss that, since Husband wanted to maintain the home and the surrounding vacant lots, he could buy Wife's share. The trial court also addressed the oil and gas well investments. Pursuant to R.C.3105.171(F)(6), the trial court noted the tax consequences of the property division. As other factors it found relevant and equitable, the trial court discussed that while both Husband and Wife are unemployed, Husband's monthly income from investments and social security is greater than Wife's monthly benefits and that the payment of Husband's tax penalties led to the depletion of Wife's retirement savings. Based on the foregoing, this Court cannot conclude that a distributive award under R.C. 3105.171(E)(1) is an abuse of discretion. Therefore, Husband's third assignment of error is overruled.
 Assignment of Error Number Four The trial court erred in awarding spousal support to [Wife] in the amount of $825.00 per month until her death or remarriage as the [c]ourt based said award on the basis of need.
Husband has argued that the spousal support award was improperly based on need rather than the statutory requirement of what is appropriate and reasonable under the circumstances. This Court disagrees.
An appellate court reviews a trial court's spousal support award under an abuse of discretion standard. Moore, 83 Ohio App.3d at 77, citingBlakemore, 5 Ohio St.3d at 218. Therefore, this Court will not overturn a spousal support award unless the award was unreasonable, arbitrary, or unconscionable. Blackmore at 218. See, also, Noll v. Noll (June 7, 2000), Lorain App. No. 98CA007042, unreported. The party challenging the award bears the burden of showing that the award is the result of an abuse of discretion. Noll at 2-3.
"In determining whether spousal support is appropriate, a court shall be guided by the factors listed in R.C. 3105.18(C)(1). However, the amount of support is discretionary with the court." Moore,83 Ohio App.3d at 78, citing Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 130-131. R.C. 3105.18(C)(1) sets forth the following factors for the court's consideration:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under [R.C. 3105.171];
(b) The relative earning abilities of the parties;
 (c) The ages and physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of the education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
"This Court has previously held that need is not a basis for an award of spousal support, the only relevant question is what is appropriate and reasonable under the circumstances, and that once the fourteen factors [under R.C. 3105.18(C)(1)] have been considered, the amount of spousal support is within the sound discretion of the trial court." (Citations and quotations omitted.) Noll at 5. "A trial court is not required to enumerate each factor in R.C. 3105.18(C)(1), but must merely provide a sufficient basis to support its award." Smith v. Smith (Dec. 5, 2001), Summit App. No. 20519, unreported at 4, citing Rowe v. Rowe (1990),69 Ohio App.3d 607, 615.
This Court cannot conclude that the trial court abused its discretion in awarding spousal support. The trial court cited the factors set forth in R.C. 3105.18(C)(1) and applied the applicable factors. Husband contends that the award was based on Wife's need as laid out in her budget proposal, instead of on what was appropriate and reasonable. This Court finds no merit in such a contention. While the trial court discussed Wife's budget, it did not base the spousal support award on need; need was only mentioned when the court noted what was included in Wife's budget. The record shows that the trial court considered the R.C.3105.18(C)(1) factors in setting an appropriate and reasonable award under the circumstances. The decision of the trial court provides a sufficient basis for the spousal support award and was not unreasonable or arbitrary. Therefore, this Court finds that the spousal support award was not the result of an abuse of discretion. Accordingly, Husband's fourth and final assignment of error is overruled.
 III
Husband's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
BETH WHITMORE, BATCHELDER, J. CONCURS
[1] Lots 163 and 166 were purchased after the marriage and are not in dispute; therefore, this Court will not discuss lots 163 and 166.
[2] The magistrate's conclusion that all of the property was marital is fully supported by the law. The joint and survivorship warranty deed granted a joint and survivorship interest in all of the property to Husband and Wife. R.C. 5302.20, which addresses survivorship tenancy, provides that survivorship tenants hold "an equal share of the title during their joint lives" and have "an equal right to share in the use, occupancy, and profits" of the property. R.C. 5302.20(B) and (C)(1). Pursuant to R.C. 5302.20(C)(5):
 If the entire title to a parcel of real property is held by two survivorship tenants who are married to each other and the marriage is terminated by divorce * * * the title * * * immediately ceases to be a survivorship tenancy and becomes a tenancy in common. Each tenant in common of that nature holds an undivided interest in common in the title to the real property * * *[, which] shall be equal unless otherwise provided in the instrument creating the survivorship tenancy or in the judgment of divorce[.]
Had the legislature intended to make joint and survivorship ownership that of a separate, proportional share of the ownership interest, it could have used such language. Therefore, under the facts of this case and the foregoing statutory provisions, Husband and Wife's survivorship interest in all of the real estate was properly designated as marital property.
[3] Husband must prove the property is separate by a preponderance of the evidence by tracing the property to his pre-marital separate property. He does not have to prove the property is separate by clear and convincing evidence. In Spinetti v. Spinetti (Mar. 14, 2001), Summit App. No. 20113, unreported, at 8, this Court held that the proponent of a separate property claim must prove by clear and convincing evidence that the property is separate. Spinetti involved a husband who received a gift after the date of marriage. Pursuant to R.C. 3105.171(A)(6)(a)(vii), when a gift is made after the date of marriage, to properly be classified as separate property, it must be proven by clear and convincing evidence that the gift was given only to one spouse. Therefore, Spinetti does not hold that all separate property claims must be shown by clear and convincing evidence, but rather that separate property claims based on gifts must be established by clear and convincing evidence.
[4] The trial court noted that Husband could use his portion of the sale proceeds of the house as the $14,000.00.