[Cite as *Campbell v. Campbell*, 2014-Ohio-5614.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| CHARLENE L. CAMPBELL, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-L-015** |
| TIMOTHY SEAN CAMPBELL, et al., | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 09 DR 000527.

Judgment: Affirmed in part and modified in part.

*Patrice F. Denman,* Patrice F. Denman Co., L.P.A., 1111 Mentor Avenue, Painesville, OH 44077 (For Plaintiff-Appellee).

*Mary Joseph Clair,* 4132 Erie Street, #202, Willoughby, OH 44094 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Timothy Sean Campbell, appeals from the judgment entry of the Lake County Court of Common Pleas, Domestic Relations Division, affirming in part, and modifying in part, the decision of its magistrate regarding the division of property in Mr. Campbell's divorce from Charlene L. Campbell. Principally, Mr. Campbell asserts the trial court failed to properly evaluate his separate property. He also finds error in the trial court's valuation of the marital residence. We affirm in part and modify in part.

{¶2} The parties were married in 1997, and have two children, Cassandra and Timothy. A divorce action between the parties was filed in 2006, but they reconciled. August 24, 2009, Ms. Campbell filed the underlying complaint for divorce in this case. Mr. Campbell's father, Timothy S. Campbell, Sr., was joined as a party defendant. Mr. Campbell answered and counterclaimed October 20, 2009, and Ms. Campbell answered the counterclaim October 26, 2009.

{¶3} A case management order issued February 16, 2010, indicating both parties agreed to pass all pending motions to final trial. They were referred to mediation, which failed. Trial commenced before the magistrate July 27 and 28, 2010, and then was recessed until October 22, 2010. October 26, 2010, the parties filed a joint petition for conciliation, and the trial court stayed proceedings. The conciliation failed.

{¶4} Further trial was had June 20 and 22, 2010, and July 8, 2010. The parties filed proposed findings of fact and conclusions of law August 23, 2011.

{¶5} The magistrate filed his decision August 10, 2012. Both parties objected. Hearing was held on the objections January 22, 2013; and the trial court issued its judgment entry regarding the objections August 30, 2013. Ms. Campbell filed a proposed final judgment entry, to which Mr. Campbell filed objections. The trial court ruled on the objections, and issued its final decree January 8, 2014. Mr. Campbell timely noticed appeal, assigning three errors.

{¶6} Relevant facts will be discussed under the appropriate assignments of error.

{¶7} The first assignment of error is: "The Trial Court erred in refusing to return to husband his separate component in the Munson Road, Mentor, Ohio residence. The Munson Road property never had a marital component; the equity was separate and had been reduced by marital debts."

{¶8} At the time of marriage, Mr. Campbell owned a house on Harrison Street, Mentor, Ohio, which he purchased with a down payment of $5,637. The house was sold in September 2009, and Mr. Campbell realized a profit of $5,034.78 as his separate property.

{¶9} Mr. Campbell used the proceeds from the sale of the Harrison Street property to purchase property in Montville, Ohio. It was titled solely in his name. He also obtained a construction loan, later converted to a mortgage, solely in his name.

{¶10} In May 2000, Mr. Campbell suffered a serious accident at his place of employment, Polychem, causing serious injury to one hand, including the loss of a finger. He received extensive worker's compensation benefits, compensating him for his lost wages. Further, he and Ms. Campbell hired attorneys James Joseph and Steve Albert to file a personal injury action against Polychem. The action asserted pain and suffering, and punitive damages on Mr. Campbell's behalf, and loss of services and consortium for Ms. Campbell. The action settled for $775,000 in May 2000, and the Campbells received a check for $414,448.90, payable to them both, and with no breakdown of any percentage attributable to either party's claims.

{¶11} Mr. Joseph testified at trial on Mr. Campbell's behalf. He admitted the file in the personal injury action had been destroyed, with Mr. Campbell's approval. He referred throughout his testimony to an exhibit given him by Mr. Campbell's counsel,

3

allegedly showing the amounts paid to the Campbells, and those retained by counsel as fees or expenses. Mr. Joseph admitted he could not tell if the document had been generated by himself or Mr. Albert. He testified that in his experience, four to five percent of a personal injury recovery of the magnitude in question was attributable to a spouse's loss of services and consortium.

{¶12} Mr. Campbell used a portion of the proceeds from his personal injury claim to pay off his mortgage on the Montville house. He then deposited the remaining amount in an account separate from that generally used by the couple. He took out an equity line on the Montville house. He sold the house in October 2005, and used the proceeds to purchase the property on Munson Road, and to obtain a construction loan for building a house there. This loan was converted to a mortgage, and the mortgagee granted a homeowners line of equity with the mortgage of $20,000. The mortgagee insisted the Munson Road property be titled to both parties. Later, Mr. Campbell doubled the equity line.

{¶13} R.C. 3105.171(A)(6)(a)(vi) provides that personal injury awards are a spouse's separate property. Consequently, at trial, Mr. Campbell argued that his equity in the Munson Road property was 95% or 96%, based on Mr. Joseph's testimony that only four or five percent of the settlement of his personal injury action was attributable to Ms. Campbell's loss of services and consortium claims. The magistrate specifically found Mr. Joseph's testimony unconvincing. Relying on the decision of the court in *Cox v. Cox*, 12th Dist. Fayette No. CA98-05-007, 1999 Ohio App. LEXIS 480 (Feb. 16, 1999), the magistrate found the proceeds of the personal injury settlement untraceable, since the settlement was issued in a single check to both parties. He further cited to

4

case law indicating a wide range in the percentages Ohio's courts find attributable to loss of service and consortium claims in personal injury settlements.

{¶14} Mr. Campbell objected to this finding, and the trial court affirmed. In doing so, the trial court further cited to *Long v. Long*, 176 Ohio App.3d 621, 2008-Ohio-3006 (2d Dist.), wherein the court held husband's personal injury settlement became untraceable when the parties took out a home equity loan relating in part to funds originally traceable to the personal injury settlement.

{¶15} On appeal, Mr. Campbell asserts the same arguments as he did below. We are respectfully un-persuaded.

{¶16} A trial court's decision to adopt, reject, or modify a magistrate's decision is reviewed for abuse of discretion. *In re Gochneaur*, 11th Dist. Ashtabula No. 2007-A-0089, 2008-Ohio-3987, ¶16. Regarding this standard, we recall the term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

{¶17} In *O'Grady v. O'Grady*, 11th Dist. Trumbull No. 2003-T-0001, 2004-Ohio-3504, ¶45-49, this court stated:

{¶18} "Before addressing appellant's assignments of error, we will first lay out the appropriate standard of review under which an appellate court must review a trial court's division of property in a divorce action. In a divorce action, a trial court must first

5

characterize all property as either marital property or separate property. R.C. 3105.171(B).

**{¶19}** "Marital property is defined as any real property, personal property, or interest therein that is owned by either or both spouses, including their retirement benefits, that were acquired by either or both of the spouses during marriage. R.C. 3105.171(A)(3)(a)(i) through (ii). See, also, *Neville v. Neville*, 99 Ohio St.3d 275, * * *, N.E.2d 434, 2003-Ohio-3624, at ¶6. Marital property also includes all income and appreciation on separate property that occurred during the marriage due to labor, monetary, or in-kind contribution by either or both spouses. R.C. 3105.171(A)(3)(a)(iii).

**{¶20}** "Likewise, separate property includes any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage. R.C. 3105.171(A)(6)(a)(ii). The commingling of separate property with marital property does not destroy the identity of the separate property as long as the separate property is traceable. R.C. 3105.171(A)(6)(b).

**{¶21}** "It should be noted that property acquired during the marriage is presumed to be marital property. 'The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property.' *Smith v. Smith* (Oct. 15, 1999), 11th Dist. No. 98-A-0034, 1999 Ohio App. LEXIS 4862, at *13. See, also, R.C. 3105.171. The trial court is required to make findings as to whether a party requesting the court to classify an asset as separate property has met his burden of proof and successfully traced an asset to separate property. *Letson v. Letson* (Sept. 30, 1997), 11th Dist. No. 95-T-5356, 1997 Ohio App. LEXIS 4445*,* at *11.

6

{¶22} "A 'trial court's characterization of property (* * *) is a question of fact, thus, a reviewing court must apply a manifest weight of the evidence standard of review to the trial court's characterization.' *Humphrey v. Humphrey*, 11th Dist. No. 2000-A-0092, 2002 Ohio 3121, at ¶16. In determining whether a trial court's characterization of property is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence the trial court clearly 'lost its way and created such a manifest miscarriage of justice that the (judgment) must be reversed and a new trial ordered.' (Citations omitted.) *Boggins v. Boggins* (June 26, 2002), 9th Dist. No. 3246-M, 2002 Ohio 3183, at ¶7." (Parallel citations omitted.)

{¶23} We agree with the reasoning of the Twelfth Appellate District in *Cox*, *supra*, at *11-12, where the court held:

{¶24} "This court is not without guidance in the division of personal injury awards in divorce proceedings. In *Modon v. Modon* (1996), 115 Ohio App. 3d 810, * * *, the Ninth District Court of Appeals determined that:

{¶25} "'[T]he trial court's inability to determine what amount of (the personal injury) proceeds was payment for loss of wages and Mrs. Modon's loss of consortium as opposed to compensation for Mr. Modon's permanent injuries, pain and suffering, and medical expenses, was fatal to his claim.' *Id.* at 815. The court went on to state:

{¶26} "'[B]y choosing to receive the settlement proceeds in one check, the Modons commingled their separate and marital property. In order for Mr. Modon's separate property to maintain its separate character, he had to trace it into the check. In order to do so, he had the burden of convincing the trial court how much of the check

7

was compensation for his permanent injuries, pain and suffering, and medical expenses.' *Id.* at 816.

{¶27} "Similarly, in this case, the parties received their personal injury proceeds in a check payable to both parties, thereby commingling their separate and marital property. Accordingly, the burden of proof was on appellant to convince the trial court that his separate property was traceable. The evidence presented only definitively traced a portion of the settlement proceeds, and then traced them into a marital home purchased and titled in the names of both parties. Additional evidence revealed that the parties used the remainder of the proceeds for joint debts and improvements to the marital residence. Even the attorney who handled the parties' lawsuit could not determine what amount of the personal injury proceeds would have been separate as opposed to marital property." (Parallel citation omitted.)

{¶28} In this case, the personal injury settlement was paid in one check. Of course, it was not initially used to purchase a house titled to both parties, as in *Cox*. Rather, Mr. Campbell used the monies to pay off the mortgage on the Montville house, then purchase the Munson Road property. However, the magistrate found Mr. Joseph's testimony that Ms. Campbell's portion of the settlement was only four to five percent of the total unconvincing. It was Mr. Campbell's burden to show what portion of the proceeds from the personal injury settlement was his separate property, and he failed to do so.

{¶29} The first assignment of error lacks merit.

{¶30} The second assignment of error is: "The Trial Court committed prejudicial error and abused its discretion in not finding that the fair market value of the Munson Road, Mentor property was $215,000.00 pursuant to the Casto Appraisal."

{¶31} The parties submitted as a joint exhibit the appraisal of Cynthia Casto regarding the value of the Munson Road property. She gave it an unimpaired value of $240,000, and an impaired value of $215,000. The impaired value related to the breaking of the sump pump. Mr. Campbell, and his father, testified this caused considerable damage to the house, including mold growth. Ms. Campbell, who has a realtor's license, did not believe there was any impairment. In her appraisal, Ms. Casto references repair estimates given by various contractors for fixing the alleged impairments, but expressed concern as to their validity. Those estimates were not attached to her report, and the contractors giving them did not testify.

{¶32} Based on the foregoing, the magistrate "split the difference," and assigned a value of $227,500 to the Munson Road property. In its August 30, 2013 judgment entry, the trial court modified this figure. Citing to this court's decision in *Davis v. Davis*, 11th Dist. Geauga No. 2011-G-3018, 2013-Ohio-1118, the trial court held it was improper to choose arbitrarily between two figures for valuing an asset in divorce proceedings, and went on to hold that Mr. Campbell failed to present proper evidence regarding damage to the property, or the costs of repair. Consequently, the trial court determined the property should be valued at $240,000. On appeal, Mr. Campbell insists his testimony and that of his father was sufficient to require a finding for the impaired value.

{¶33} In *Davis, supra*, at ¶41, this court held:

9

{¶34} "As to the use of a particular method of determining an asset's value, a trial court has no obligation to adopt or follow any specific method of valuation. *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, ¶27, * * * (3rd Dist.). Thus, when a 'value' question is raised on appeal, the task of the appellate court "'is not to require the adoption of any particular method of valuation, but to determine whether, based on all relevant facts and circumstances, the (trial) court abused its discretion in arriving at a value.'" *McLeod v. McLeod,* 11th Dist. No. 2000-L-197, 2002-Ohio-3710, ¶61, quoting *James v. James*, 101 Ohio App.3d 668, 681, * * * (1st Dist.1995). Pursuant to the foregoing precedent, an abuse of discretion cannot be deemed to have occurred when the trial court's 'value' determination is supported by some competent, credible evidence. *Huelskamp*, at ¶27." (Parallel citations omitted.)

{¶35} Further, the valuation of property in a divorce being a question of fact, we review the trial court's valuation of an asset under a manifest weight standard. *Davis* at ¶40, quoting *Covert v. Covert*, 4th Dist. Adams No. 03CA778, 2004-Ohio-3534, ¶6.

{¶36} Given this standard of review, we cannot find the trial court abused its discretion in choosing the unimpaired valuation for the Munson Road property. The decision is supported by competent, credible evidence. Ms. Casto herself expressed doubt concerning the costs of repairs submitted by the contractors, and their reports were not submitted to the trial court. Ms. Campbell denied many of the damages testified to by the Campbells, father and son, and the magistrate clearly found neither side's version convincing, since he settled on a valuation exactly between the impaired and unimpaired figures.

{¶37} The second assignment of error lacks merit.

**{¶38}** The third assignment of error is: "The Trial Court committed prejudicial error in refusing to factor in a percentage or a dollar amount as to the undisputed joint investment of Husband and paternal grandfather in a racecar in determining the marital component, if any, of said asset."

**{¶39}** Mr. Campbell and his father (as well as Mr. Campbell's brothers-in-law and sisters) are avid drag racing enthusiasts. Both Mr. Campbell and his father drive in races frequently. In late 2005, they purchased a race car in Pennsylvania for $15,500, Mr. Campbell contributing $6,000 from his personal injury monies, his father contributing $9,500. His father has since spent some $16,200 on parts and labor improving the car. Both father and son testified at trial they viewed their purchase of the race car as a joint venture. In his decision, the magistrate stated that Mr. Campbell, Sr., was a particularly credible witness on the issue of the race car. The parties had stipulated the value of the car to be $25,000. The magistrate assigned 61% of this value to Mr. Campbell, Sr., and 39% to his son, that being $9,750, all of which was marital. Consequently, he determined Mr. Campbell should pay Ms. Campbell $4,875 for her half of the race car.

**{¶40}** In its August 30, 2013 judgment entry, the trial court held there was insufficient evidence of a joint venture regarding the race car, since there was no written agreement between Mr. Campbell and his father. The trial court found the stipulated value of the race car to be marital, less $5,034.78 as Mr. Campbell's separate property.

**{¶41}** On appeal, Mr. Campbell asserts the magistrate was correct, and the trial court incorrect. We agree. A joint venture is a matter of contract, either express or implied. *Ford v. McCue*, 163 Ohio St. 498 (1955), paragraph one of the syllabus. There is no need for a written contract. The magistrate, who was trier of fact in this case,

11

found Mr. Campbell, Sr.'s testimony on the issue of the race car convincing. Further, there is no evidence in the record that Mr. Campbell, Sr., intended a gift to his son. The value of the marital portion of the race car was properly determined by the magistrate. Consequently, we reverse the trial court on this issue, and reinstate the magistrate's decision, finding Mr. Campbell should pay Ms. Campbell $4,875 for her portion of the race car. *See, e.g.*, App.R. 12(B).

{¶42} The third assignment of error has merit.

{¶43} The judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed in part and modified in part.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.