[Cite as *Nobles v. Nobles*, 2024-Ohio-2750.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


TONYA NOBLES

     Plaintiff-Appellee

-vs-

STEVEN NOBLES

     Defendant-Appellant

JUDGES:
Hon. Patricia A. Delaney, P.J.
Hon. William B. Hoffman, J.
Hon. John W. Wise, J.

Case No. 2023 CA 00005

O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Domestic Relations Division, Case No. 21 CV 00101 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | July 18, 2024 |


APPEARANCES:

For Plaintiff-Appellee

VALERIE K. WIGGINS
107 South Main Street
New Lexington, Ohio  43764

For Defendant-Appellant

JASON DONNELL
LAW OFFICES of JASON M.
DONNELL, LLC
302 East Main Street
Lancaster, Ohio  43130

*Wise, J.*

{¶1}   Appellant-Husband, Steven T. Nobles, appeals the judgment of the Perry County Court of Common Pleas, Domestic Relations Division, dividing the assets acquired during his marriage to Appellee-Wife, Tanya Nobles, upon its termination.  For the reasons that follow, we affirm the judgment of the trial court.

**FACTS AND PROCEDURAL BACKGROUND**

***Summary of claims***

{¶2}   Appellant-Husband and Appellee-Wife were married on May 22, 2004 in Fairfield County, Ohio. One child was born of the marriage who graduated from high school in May 2023.  Another child, husband's biological child who was adopted by wife, was an adult at the time the marriage terminated.  Child Support is not an issue.

{¶3}   The sole issue in this case is the husband's claims that the trial court abused its discretion in dividing the assets obtained during the marriage. Specifically, husband claims the trial court did not give due regard to the contribution he made to the purchase of the real estate obtained during the marriage by way of his personal injury settlement. Husband claims that the trial court erred in not finding that the equity in the marital residence, the down payment for the home, and an annuity and cash management fund were his separate property because the funds came from a personal injury settlement he received for severe injuries he sustained in 2005 during the marriage.

{¶4}   On April 30, 2021, wife filed a divorce complaint in the Perry County Common Pleas Court, Domestic Relations Division, on the grounds of incompatibility.  At the time, husband was incarcerated after pleading guilty to cocaine possession, hashish possession and aggravated drug possession and sentenced to four and one-half years in

a state prison. Despite husband's incarceration, both parties actively participated in the divorce proceedings; wife in person and husband through a deposition taken at the prison.

{¶5} Two major life events occurred during the marriage which are relevant to the husband's claims.

### Husband in catastrophic automobile accident in 2005

{¶6} About a year after their marriage, husband was a passenger in an automobile involved in a catastrophic accident which left him seriously injured.  At the time, he was employed as a construction subcontractor installing vinyl, cement and fiber siding.  The wife was attending school at the time, training to be a medical assistant. The children were one and one-half and four years of age.  Husband was in the hospital for three to four days and unable to work for about six months after the accident.  (Noble Dep. at 53).

{¶7} Husband was released to the care of his wife.  It was the opinion of his personal injury attorney that he was released too early because of no health insurance coverage, and his wife provided nursing care normally provided in a hospital and/or a rehabilitation center.

{¶8} As a result of a claim made by husband and wife against the tortfeasor, a settlement was reached which resulted in a net payout to the parties of $945,389.22 in the Spring of 2007.  Prior to final settlement, the tortfeasor paid the couple $50,000 for lost wages of the husband.  The parties are in dispute as to whether the  final settlement check was payable to both parties.  However, both agree that the settlement agreement and release of claims was signed by both husband and wife and released the tortfeasor from further claims by both of them.

{¶9} A settlement statement prepared at the time of the settlement contained no calculation of what percentage of the settlement funds belonged to the husband and what percentage of the settlement belonged to the wife for her consortium claim. The personal injury attorney who represented the parties was deposed and the parties stipulated to his expertise in the matter. He testified that no calculation was made at the time of the settlement as to how much represented the wife's consortium claim. He opined, however, that eighty to eighty-five percent was consigned to the husband for his significant injuries and the remainder to husband's lost income and wife's consortium claim. "The component for lost income and loss of consortium would have made up the other 15-20% of the settlement." Later, he stated: "Under no circumstances is Mr. Nobles' non-marital portion of the settlement less than 75% of the total settlement amount." (Affidavit to Rourke Dep. Exh. C). "Five to ten percent of this was likely for the consortium claim. That's not underselling Tonya a bit. I thought she was a very good client to work with. She was clearly very involved in the care and involved in the - this case and with her husband." (Rourke Dep. at 42). "She had to be basically his nurse for some extended period of time." (Rourke Dep. at 48). The personal injury attorney also outlined the basis of wife's consortium claim. She was the sole caretaker of husband following his release from the hospital, and the care of the children was primarily her responsibility

{¶10} This opinion was based on his personal experience and education but was more of an "art" than "science". Rourke Dep. at 40. "I can tell you what the exact settlement amount is and what - the breakdown that we went through as far as what was paid out. But giving you an exact number that this settlement represented for noneconomic or economic or consortium, I can't do that." (Rourke Dep. at 72). In a

demand letter submitted to the tortfeasor's attorney, the economic loss suffered by husband and his family was estimated to be $1,590,719.00. "As you will see from reviewing the report, Dr. Palfin estimates the economic loss suffered by Mr. Nobles and his family to be $1,590,719.00." (Exh. 1 to Rourke Dep.).

{¶11} Husband went back to work approximately six months after his accident and worked as a contractor installing siding and gutters for a few months. Then he started a business in the winter of 2008 until approximately 2013 making less than $30,000 per year. (Noble Dep. at 54). He then worked at a hospital as a medical waste technician for about a year.

{¶12} Husband then stayed home as a househusband trafficking narcotics. "…I went home and I sat home and took care of the kids and was basically a househusband, and I trafficked the narcotics for a period of time." (Nobles Dep. at 57). Meanwhile, wife continued her employment in the medical field.

### *Proceeds of personal injury settlement held jointly*

{¶13} Seeking the help of a financial planner, the parties used the settlement check to fund two IRA accounts, one for each of them, a cash management account held jointly, and a Lincoln National annuity held jointly which paid approximately $1,200 per month to the parties. Husband also used some funds to start a construction business, buy a truck, and the parties took several expensive vacations and paid incurred marital debts.

{¶14} In 2007, the parties built a marital residence in Thornwood, Ohio. Husband testified the residence and lot cost $365,000. $54,700.00 of the personal injury settlement was used for a down payment for the lot, and the remainder of the purchase price was

funded by a mortgage in the amount of $180,789.00.  The mortgage was later refinanced in 2013 for $169,895.00.  The majority of the monthly mortgage payment was taken from the Lincoln Financial annuity the parties funded with the settlement proceeds. While husband was incarcerated with no income, wife's salary supplemented the mortgage payment.

{¶15}  At the time of the termination of the marriage, the value of the marital residence was $365,000.00 as agreed by the parties with a mortgage balance of $141,369.00.  The equity in the marital home was determined to be $223,631.00.

### Husband incarcerated in 2019

{¶16}  In 2014, husband began selling and using drugs, including cocaine and marijuana. (Nobles' Dep. at 73). During the period he was selling drugs, he travelled a lot and pleaded the Fifth Amendment when asked where he travelled and whether it included travel out of the country.  Wife testified he took several trips to music festivals and out of the country trips to the Dominion Republic.

{¶17}  In May, 2019, he pleaded guilty to possession of cocaine, possession of hashish and aggravated possession of drugs.  He was sentenced to a total prison term of four-and-one-half years on May 15, 2019. In addition to the prison term as a part of his sentence, he was ordered to pay $17,500 in fines and court costs.  His expected release date was May 10, 2023, the same month and year his daughter graduated from high school. (Nobles Dep. at 6).

{¶18}  During his incarceration, his wife continued to reside in the marital home, work in the medical field, and provide care and support for the children of the marriage. Their teenage daughter was in high school and involved in various sports activities,

including gymnastics. The Lincoln Fund monthly annuity payment continued to fund the majority of the house payment, and the wife's income was used to support the household.

{¶19} For several years, wife paid $25.00 per month under a payment plan for the husband's fine and court costs and deposited moneys in husband's prison commissary account for basics of $200.00 per month.

### *Findings of the trial court*

{¶20} On October 3, 2022, a divorce hearing was held before a magistrate of the Perry County Domestic Relations Court. The wife was present with counsel, and husband's counsel was present. The deposition of the husband taken at the London Correctional Institution was entered into evidence. The deposition of the personal injury attorney was entered as an exhibit, as well as various documents pertaining to the parties personal and real property. The wife's testimony was recorded and is part of the record.

{¶21} At the conclusion of the hearing, the magistrate requested trial memoranda from the parties. Husband's memoranda attached a letter from a forensic real estate appraiser that was not entered as an exhibit and not subject to cross examination. The letter was not considered by either the magistrate or the trial court.

{¶22} On October 31, 2022, the magistrate made her decision, which included findings of fact and conclusions of law. Both parties challenged the decision of the magistrate, and the trial court filed its independent findings after reviewing the evidence and law on September 5, 2023.

{¶23} Relevant here, the trial court found that the husband failed to meet his burden to show what portion of the settlement proceeds were separate property. "The

settlement proceeds were commingled and are, therefore, considered marital property."
Judgment Entry, Sept. 5, 2023 at 7.

{¶24} The trial court awarded the residence to the wife free and clear of any claims of the husband, including the $223,630.86 equity in the home. Wife was ordered to pay the outstanding mortgage.

{¶25} The trial court awarded the Lincoln joint annuity to the husband of $372,533.42, free and clear of any claims of the wife. Judgment Entry, Sept. 5, 2023 at 7.

{¶26} The trial court further equally divided the parties' retirement accounts. Judgment Entry, Sept. 5, 2023 at 7.

{¶27} Recognizing that the division of marital property was not equal - husband received $148,902.56 more than wife - the trial court made two findings. First, it found that the settlement money was as a result of serious injuries the husband sustained which likely affected his ability to earn future substantial earnings. In contrast, the wife had the ability to continue to earn wages. Second, the trial court found that dividing the jointly held annuity would result in adverse consequences to the asset. "Therefore, the division of the marital residence and the annuity is equitable." Judgment Entry, Sept. 5, 2023 at 8.

{¶28} With regard to the debts, the trial court sustained the magistrate's finding that husband was responsible for his court costs and fines, while the wife was responsible for her student loans. With regard to the debt for overpayment of Social Security, the trial court ordered the parties to each be responsible for one-half of the debt to Social Security.

{¶29} "The Defendant owes a debt to the Social Security Administration. He did not qualify for social security from 2007 until 2012 but received social security payments.

He is required to pay the money back. The parties' children also received social security checks under Mr. Nobles' account and were overpaid. The Plaintiff testified the debt was approximately $30,000.00. The parties shall each be responsible for one-half of this debt."

{¶30} Judgment Entry, Sept. 5, 2023 at 3, 8; Magistrate's Decision, Oct. 31, 2022 at 26.

{¶31} The husband filed a timely appeal arguing five assignments of error:

{¶32} "I.      THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO FOLLOW O.R.C. 3105.71(A)(6)(a)(vi) IN AWARDING APPELLANT'S PERSONAL INJURY SETTLEMENT AS NON-MARITAL PROPERTY.

{¶33} "II.     THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO FIND APPELLANT TRACED THE NON-MARITAL COMPONENTS OF THE PERSONAL INJURY SETTLEMENT.

{¶34} "III.    THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO RULE THERE IS NON-MARITAL EQUITY IN THE RESIDENCE LOCATED AT 12094 BEECHTREE SOUTH, THORNVILLE, OHIO 43076.

{¶35} "IV.    THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO FOLLOW CASE LAW STATING IT IS APPELLEE'S BURDEN TO SHOW WHICH COMPONENTS OF THE RESIDENCE ARE MARITAL AND THEREFORE SUBJECT TO EQUAL DIVISION.

{¶36} "V.     THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO RULE APPELLANT'S FINES AND COURT COSTS ARE A MARITAL DEBT SUBJECT TO EQUAL DIVISION PURSUANT TO O.R.C. 3105.171.

**LAW AND ANALYSIS**
*Standard of Review*

{¶37} A domestic relations court's division of property in a divorce proceeding is reviewed under an abuse of discretion standard. *Cherry v. Cherry,* 66 Ohio St.2d 348, 355 (1981); *Cockerham v. Cockerham*, 2017-Ohio-5563, ¶ 21 (5th Dist.). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983). ("It is ill-advised and impossible for any court to set down a flat rule concerning property division upon divorce" *citing Cherry*, *supra*, 66 Ohio St.2d at 355). Put another way, when an issue on review is governed by the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough without more to find error. *State v. Beechler,* 2010-Ohio-1900, ¶ 67 (2nd Dist).

{¶38} This discretion extends to an unequal division of property if equities require it. *Cox v. Cox,* 1995 WL 399419, (12th Dist.). It also extends to a trial court's decision on what is presently separate and marital property. *Cockerman,* 2017-Ohio-5563, at ¶ 22, *quoting Valentine v. Valentine,* 1996 WL 72608, (5th Dist.).

{¶39} As husband's assigned errors numbers one through four relate to the trial court's division of marital property, this Court reviews the trial court's property division "as a whole in determining whether it has achieved an equitable and fair division of marital assets." *Victor v. Kaplan,* 2020-Ohio-3116, ¶ 26 (8th Dist.).

**I, II, III, IV  Personal Injury Settlement**

{¶40}  In Assignments I, II, III and IV, Appellant-Husband argues that the trial court abused its discretion when it did not award him the proceeds of the personal injury settlement the parties received in 2005 as separate property, free from the claims of the wife.  Husband claims he successfully traced the settlement funds to the assets held by the parties at the time the marriage terminated. Because they arise from the same decision of the trial court, we will consider these assignments together.

{¶41}  Husband argues that there are two assets acquired during marriage that should have been treated as his separate property:  one, the Lincoln Financial Group Annuity in the amount of $372,000; and two, the "non-marital" equity in the marital residence, in addition to the $54,900 down payment. It is unclear to this Court how much of the equity in the marital residence husband is seeking, but it is clearly more than one-half of the equity [1]

{¶42}  Since the trial court awarded him the entire amount in the Lincoln Annuity, his argument centers around the marital residence.  Husband argues that because his personal injury award was used to purchase the residence and the annuity was used to make mortgage payments, he has proven by a preponderance of the evidence that this property is separate non-marital property attributed to him.

---

[1] The forensic expert who submitted a letter attached to husband's trial brief claimed that 82% or $262,232.72 of the marital residence was non-marital and should be awarded to husband plus one-half of the marital equity for a total of $273,176.22 for his portion of the marital residence. However, the letter report was not entered as an exhibit and not subject to cross-examination. The trial court did not consider it, and appellant has not made the trial court's decision rejecting the forensic report an assignment of error.

### Burden on appellant to trace settlement proceeds

{¶43} R.C. 3105.171(A)(6) sets forth six assets accorded separate property status upon a showing that they were not merged into marital property. R.C. 3105.171(A)(6)(a)(vi) provides that marital property does not include "[c]ompensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets."[2]

{¶44} The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. *Nelson v. Nelson,* 2022-Ohio-658, ¶ 50 (11th Dist.).

{¶45} Where a personal injury settlement is made payable in one check to both husband and wife, the parties commingle their separate property.

{¶46} In *Modon v. Modon,* 115 Ohio App.3d 810, 816 (9th Dist., 1996), appeal not allowed 78 Ohio St.3d 1442 (1997) a case cited by the trial court in its Entry, husband was seriously injured in a plane crash and was hospitalized for two months, followed by two months in a rehabilitation facility. He returned to work but worked only a year before retiring.

{¶47} Husband and wife brought a personal injury action against the tortfeasors and settled it for a total of $600,000 before trial. Both husband and wife were parties to the lawsuit; the wife for loss of consortium. The parties agreed to receive a check payable to them jointly and invested the proceeds into assets held jointly by the parties.

---

[2] The statute was amended on March 22, 2023 but did not change the language cited above.

{¶48}  The wife filed for divorce some three years later.  At the contested divorce trial, the husband argued that he could trace all but approximately $70,000 of the settlement proceeds to the personal injury action and thus under the statute, the assets were his separate property.  In support of his argument, he relied on his own testimony and the testimony of a personal injury expert witness attorney.

{¶49}  The expert witness attorney testified that the personal injury settlement would have consisted of five parts:  (1) compensation for permanent injuries; (2) compensation for pain and suffering; (3) compensation for medical expenses; (4) compensation for lost earnings; and (5) compensation for wife's loss of consortium. *Id.* at 813.  The expert witness attorney valued wife's consortium claim at no more than three percent of the total settlement package.

{¶50}  The trial court disagreed with the husband's analysis and determined that the assets which the husband traced to the settlement proceeds were not his separate property but rather marital property.  *Id.* at 814.

{¶51}  Husband appealed to the 9th District Court of Appeals. The Court affirmed the decision of the trial court. First, it found that commingling of the separate property with marital assets did not destroy the identity of the separate property as long as the separate property can be traced.  *Id.* at 815.  Second, it held that the burden of tracing separate property is on the party claiming its existence.

{¶52}  In the end, the appellate court concluded that the trial court did not err in its determination that it could not determine "what part of the proceeds were for wages, consortium or pain and suffering" was not against the manifest weight of the evidence. *Id.* at 815.  "Although Mr. Modon presented evidence tracing more of the settlement

proceeds into assets still held by the parties at the time of the divorce, that evidence was irrelevant because of his failure to adequately trace his separate property into the settlement proceeds." *Id.* at 816.

{¶53} Similarly, in *Campbell v. Campbell,* 2014-Ohio-5614 (11th Dist.), husband suffered a serious injury at work during the marriage which resulted in loss of a finger. He filed a personal injury action against his employer, and husband and wife received a settlement check for $414,448.90 payable to them both. There was no breakdown of any percentages attributable to wife's consortium claims,

{¶54} Some nine years later, husband filed for divorce and argued that he was entitled to 90 to 95% of the equity in the marital home because it was funded by his personal injury settlement. In support, husband offered the testimony of the personal injury attorney. He testified that four to five percent of the personal injury recovered was attributable to wife's loss of services and consortium. *Campbell v. Campbell,* 2014-Ohio-5614 at ¶ 11.

{¶55} The trial court disagreed and found that the proceeds of the personal injury settlement were untraceable since the settlement was issued in a single check to both, and case law indicated a wide range of percentages attributable to loss of service and consortium. On appeal, the 11th District affirmed the decision of the trial court finding that husband had failed to trace how much of the check was compensation for his permanent injuries, pain and suffering, and medical expenses. It found the testimony of the personal injury attorney unconvincing.

. . . The evidence presented only definitively traced a portion of the settlement proceeds, and then traced them into a marital home purchased and titled in the names of both parties.

. . .

It was Mr. Campbell's burden to show what portion of the proceeds from the personal injury settlement was his separate property, and he failed to do so.

{¶56} *Campbell v. Campbell,* 2014-Ohio-5612, at ¶¶ 27-28. *See also Cox v. Cox,* 1999 WL 74573 (12th Dist.) (determining that proceeds of the personal injury settlement untraceable, since the settlement was issued in a single check to both parties and used to purchase a marital home in the name of both parties); *Wheeler v. Wheeler,* 2005-Ohio-1025, ¶ 17 (6th Dist.) (determining that husband's personal injury settlement was marital property subject to distribution where part of settlement was attributed to lost wages and husband contributed nothing to the household for four and one half years after his injury); *Barrientos v. Barrientos,* 2013-Ohio-424, ¶ 21 (3rd Dist.) (determining that personal injury settlement awarded to husband for severe injuries sustained prior to marriage was marital property where monies were co-mingled and untraceable); *c.f Mayer v. Mayer,* 2011-Ohio-1884, ¶ 12 (5th Dist.) (determining that workers' compensation award was not marital property where no evidence offered on what was paid from award for lost earnings or compensation for expenses paid by marital funds).

{¶57} So, too, appellant's reliance on *Lust v. Lust,* 2002-Ohio-3629, ¶ 19 (3rd Dist.) is misplaced. In *Lust,* appellee-wife was a victim of medical malpractice and as a result was legally blind, partially deaf, had two heart valves and both of her legs amputated. As

a result, she was awarded a substantial unnamed settlement.  The trial court awarded her the settlement proceeds as separate property.

{¶58}  Appellant-husband appealed arguing he was entitled to a consortium claim. Like the case here, the settlement agreement did not dedicate specific funds for his consortium, and the trial court expressed doubt that any of the settlement proceeds was intended for such a purpose given the extensive debilitating injuries to the wife.

{¶59}  Notably, the appellate court found that reviewing courts will not disturb the trial court's classification of separate and marital property absent a showing of abuse of discretion.  *Lust v. Lust,* 2002-Ohio-3629 at ¶ 12.

{¶60}  The burden of proof, by a preponderance of the evidence, is upon appellant to demonstrate that the parties intended the settlement proceeds to be treated as a separate asset belonging to the husband.  Preponderance of the evidence is the greater weight of the evidence.  *State v. Miller,* 2011-Ohio-952, ¶ 19 (10th District).

{¶61}  As proof, husband offered his own testimony and the testimony of the personal injury attorney.  We find that the trial court did not abuse its discretion when it held husband did not meet his burden to trace the personal injury settlement to his separate property.

{¶62}  Husband concedes that $111,722.69 of the personal property settlement was marital assets - $50,000 lost earnings and $61,722.69 medical bills.  He attributes no part of the settlement proceeds to the wife's consortium claim. A claim for loss of consortium is separate property.  *Campbell v. Campbell,* 2014-Ohio-5614, ¶ 25 (11th Dist.).  He attributes no part of the settlement to lost wages other than the $50,000

advance on the final settlement. Loss of wages during the marriage is marital property. *Williams v. Williams,* 2011-Ohio-939, ¶ 12, (8th Dist.).

{¶63} His claim that the personal injury attorney offered irrefutable evidence that a significant portion of the personal injury settlement was traced to his non-economic damages is misplaced.

{¶64} The attorney testified that the monies were never separated, and that his calculations were not objective but subjective. It is an "art" more than a "science".

{¶65} He was unable to place a number on the amount of the wife's claim for consortium and the amount awarded as compensation for loss of marital earnings.

{¶66} While there may be some dispute as to how the check was payable, there is no dispute that the settlement agreement and release was signed by both parties and released all claims of both parties. The majority of the proceeds were used to benefit the marriage and family. $54,000 of it was used for a marital residence owned jointly by the parties. A large portion was used to fund a joint cash management account and annuity. In short, husband and wife jointly held the majority of the funds as marital property.

{¶67} The trial court did not err and abuse its discretion in finding that the proceeds of the settlement were commingled and used to purchase the marital home and fund other joint assets. Husband was not able to trace the funds to his separate property.

### *Trial Court's disposition of property as a whole*

{¶68} Finally, we consider the trial court's disposition of the property of the parties as a whole. "In reviewing the trial court's division of property, an appellate court 'is not required to conduct an item-by-item review of a property division." *Winkler v. Thomas,* 2001 WL 81701 *1 (5th Dist.); *Beringer v. Beringer,* 2014-Ohio-5232, ¶ 49 (5th Dist.) ("[W]e

have long expressed our reluctance to engage in piecemeal review of individual aspects of a property division taken out of the context of the entire award.") Instead, a reviewing court should consider whether the trial court's disposition of marital property as a whole result in a property division which was an abuse of discretion.

{¶69} R.C. 3105.171(C)(1) provides in pertinent part:

Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable...

{¶70} The trial court recognized the injuries husband sustained in the accident rendered an equal division of marital property inequitable.

{¶71} There is no doubt that husband suffered a serious injury in the automobile accident. While he was not able to drive before the accident because of impaired vision, he lost completely all sight in his right eye. His injuries impaired his ability for gainful employment as recognized by his award of Social Security Disability benefits. The wife did not contest the extent or the seriousness of the husband's injuries.

{¶72} The trial court awarded the husband the entire amount of the Lincoln annuity totaling $372,533.42 free and clear of any claim of the wife. It also held the wife responsible for the entire mortgage on the marital residence of $141,369.14, a debt held jointly by the parties, as well as one-half of the Social Security overpayment of over $30,000. It awarded the husband one-half of the wife's 401K of approximately $36,000.

It awarded the wife the marital home with $223,630.86, free and clear of any claim of the husband.

{¶73}  In all, it awarded the husband $148,902.56 more than the wife.  Judgment Entry, Sept. 5, 2023 at 8.

{¶74}  We cannot say that the trial court's division of marital property constituted an abuse of discretion.

{¶75}  Appellant's first, second, third and fourth assignments of error are overruled.

**V**

{¶76}  In his final assignment of error, appellant-husband argues that the trial court erred and abused its discretion in finding that wife was not responsible for one-half of the fines and costs he incurred as a result of his drug convictions. "The Court finds it inequitable to order the Plaintiff to pay one-half of those debts resulting from the Defendant's criminal activities." Judgment Entry, Sept. 5, 2023 at 3. According to husband, because this debt was incurred during the marriage, the trial court should have divided the debt into two and ordered wife to pay one-half.  We find no basis for this novel argument.

{¶77}  The fine and costs are attributable to husband's criminal activity. The trial court did not abuse its discretion in finding husband responsible for the entirety of the debt.  The fine was incurred as part of the penalty for violation Ohio's drug statutes.

{¶78}  Appellant has failed to provide any case law in which an appellate court has concluded that the trial court abused its discretion when it did not order an innocent spouse to pay a portion of the other spouse's fine and costs incurred as a result of criminal activity.  Indeed, there is authority for a trial court's opposite determination that husband's

criminal charges which included expenses for attorneys' fees and lost income because of his incarceration could have been charged against him in the division of marital property. *Dragojevic Wiczen v. Wiczen,* 101 Ohio App.3d 152 (11th Dist., 1995).

{¶79}  During the husband's incarceration of over four years for his drug activity, he contributed no income to the household.  Wife raised their teenage daughter and provided for her care and support without the benefit of husband's earnings or support. No adjustment was made in the division of marital property to account for the factors caused by husband's incarceration.  Likewise, no adjustment is proper for the fines and expenses husband incurred as a result of his criminal misconduct.

{¶80}  Marital debt is defined as "debt incurred during the marriage for the joint benefit of the parties for a valid marital purpose."  *Cross v. Cross,* 2015-Ohio-5255*,* ¶ 30 (8th Dist.).

{¶81}  Appellant cannot demonstrate that his judgment for fines and costs in his criminal case are of a joint benefit to the marriage.

{¶82}  The trial court did not err in failing to order wife to pay one-half of his fines and costs for criminal activity attributed to husband during the marriage.

{¶83}  The fifth assignment of error is overruled.

**CONCLUSION**

{¶84}  For the foregoing reasons, the judgment of the Court of Common Pleas, Domestic Relations Division, Perry County, Ohio, is hereby affirmed.


By: Wise, J.

Delaney, P. J., and

Hoffman, J., concur.


JWW/kt 0702